# In the United States Court of Federal Claims

No. 13-396 L

(Filed: September 1, 2015)

|  |  |
|---|---|
| WILLIAM E. BARLOW AND TWILA L. BARLOW, et al.,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>　　　　　　Defendant. | Rails-to-Trails; Fifth Amendment Takings; National Trails System Act; Illinois Law; Fee Simple; Easement; Notice of Interim Trail Use (NITU) |

*Steven M. Wald*, Counsel of Record, Stewart Wald & McCulley, LLC, Saint Louis, MO, for plaintiff.

*Marissa A. Piropato*, Trial Attorney, *John C. Cruden*, Assistant Attorney General, Environmental and Natural Resources Division, United States Department of Justice, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

### I.      INTRODUCTION

Plaintiffs, landowners who own property adjacent to a railroad line owned by the Union Pacific Railroad Company, brought this takings action against the United States pursuant to the National Trails System Act, 16 U.S.C. §§ 1241-51 (2012).  Plaintiffs allege a Fifth Amendment takings of their reversionary interest in property underlying the railroad line right-of-way, as a result of the Surface Transportation Board's issuance of a Notice of Interim Trail Use on November 13, 2008.  The parties have filed cross-motions for partial summary judgment on the question of whether a compensable takings has occurred, pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC").  For the reasons set forth below, the Court **GRANTS** in part and **DENIES** in part plaintiffs' motion for partial summary judgment and **GRANTS** in part and **DENIES** in part defendant's motion for partial summary judgment.

## II.      FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.      Factual Background

This "rails-to-trails" case involves an alleged takings of real property situated along an abandoned railroad line located between milepost 461.5 in Fulton County, Illinois and milepost 486.2 in Peoria County, Illinois (the "Railroad Line"). 2nd Am. Compl. at 2; Pl. Mot. at Ex. D; Def. Mot. at 6-7.  It is undisputed that plaintiffs owned the land abutting the Railroad Line on the date of the alleged takings.  Def. Mot. at 7.

#### 1.      The Railroad Line

The Peoria and Farmington Railway was incorporated under Illinois state law in 1869 pursuant to a special act of the Illinois Legislature.  Def. Mot. at 6, Ex. A.  The Peoria and Farmington Railway constructed the Railroad Line between 1882 and 1883.  Pl. Mot. at 2, Ex. A; Def. Mot. at Ex. A, Ex. B.  To construct the Railroad Line, the Peoria and Farmington Railway acquired property through conveyances, transfers, and condemnation.  Pl. Mem. at 12; *see e.g.*, Pl. Mot. at Ex. P, Ex. DD; Def. Mot. at Ex. C, Ex. D.

The Union Pacific Railroad Company ("Union Pacific") is the successor-in-interest to the Peoria and Farmington Railway, as well as to the Burlington Monmouth & Illinois River Railway Company and the Iowa Central Railway Company, which each owned the Railroad Line at various times.  Def. Mot. at 6, Ex. B; Pl. Mem. at 12.

On July 1, 2008, Union Pacific filed a petition for exemption from formal abandonment proceedings with the Surface Transportation Board, which has exclusive authority over the construction, operation and abandonment of rail lines.  Pl. Mem. at 10-11; Pl. Mot. at Ex A.

On July 21, 2008, the Illinois Department of Natural Resources expressed an interest in acquiring the Railroad Line for railbanking and interim trail use, by filing a Statement of Willingness to Assume Financial Responsibility with the Surface Transportation Board.  Pl. Mot.

---

[1] The facts recounted in this Memorandum Opinion and Order are taken from plaintiffs' second amended complaint ("2nd Am. Compl. at ___"), plaintiffs' motion for partial summary judgment ("Pl. Mot. at __"), plaintiffs' memorandum in support of its motion for partial summary judgment ("Pl. Mem. at__"), defendant's motion for partial summary judgment ("Def. Mot. at __"), plaintiffs' opposition thereto ("Pl. Opp. at __"), and defendant's reply ("Def. Rep. at __").  Except where otherwise noted, the facts recited here are undisputed.

at Ex. C.  On October 16, 2008, Union Pacific indicated it was willing to negotiate with the Illinois Department of Natural Resources.  Def. Mot. at Ex. E.  Based upon the mutual expression of interest by the Illinois Department of Natural Resources and Union Pacific, the Surface Transportation Board issued a Notice of Interim Trail Use ("NITU") for the Railroad Line on November 13, 2008.  2nd Am. Compl. at 13; Pl. Mot. at Ex. D.

Although the NITU was originally set to expire on May 12, 2009, the Surface Transportation Board has granted several extensions of the expiration date for the NITU.  Pl. Mot. at Ex. E.  The most recent extension of the NITU was set to expire on April 26, 2015.  Pl. Mot. at 3; Def. Mot. at 7.  In this regard, the parties have not informed the Court of the current status of the NITU.  *See generally* Pl. Opp.; Def. Rep.

**B.     The Disputed Parcels**

In their complaint, plaintiffs identify 51 parcels of land located along the Railroad Line that they allege the government has taken without just compensation.  *See generally* 2nd Am. Compl.  The parties address 21 of these parcels in their cross-motions for partial summary judgment.  *See generally* Pl. Mot.; Def. Mot.  The 21 parcels can be grouped into five categories: (1) parcels conveyed by "right-of-way" agreements; (2) parcels conveyed by "for railroad purposes" agreements; (3) parcels with no conveying instrument; (4) parcels acquired by condemnation; and (5) parcels to which the parties agree Union Pacific held only an easement. *See* Pl. Mot. at Ex. F-L; Def. Mot. at n.1, App. A-D.  The parcels are further described below.

**1.     Parcels Conveyed By "Right-of-Way" Agreements**

First, 13 parcels of land have been conveyed to Union Pacific via its predecessor-in-interest, the Burlington, Monmouth & Illinois River Railway Company, by "right-of-way" agreements (parcels 23, 37, 51, 55, 57, 58, 59, 74, 80, 83, 91, 98, 102).  Pl. Mem. at 16-17; Pl. Mot. at Ex. P-BB; Def. Mot. at 11-12.[2]  The parties agree that the right-of-way agreements for these parcels contain identical conveyance language, which provides as follows:

[2] **Table 1: Parcels Conveyed By "Right-of-Way" Agreements**

| NARA Map/Parcel: Pl. Exhibit No. | Grantor | Affected Plaintiffs |
|---|---|---|
| 1/23: Ex. P | H. Kruse | William E. & Twila L. Barlow |
| 2/37: Ex. Q | V. Ulrich | Real Estate Development Associates, LLC |
| 2/51: Ex. R | E. Hall | George L. & Marcia J. Swords |

RIGHT OF WAY

In Consideration Of the benefits to be derived from the location and building of the Burlington, Monmouth & Illinois River Railway and One Dollar to me in hand paid by said Railway Company, the receipt whereof is hereby acknowledged, I do hereby grant and convey unto the said Burlington, Monmouth & Illinois River Railway the Right of Way for said Railway, four rods wide, over and across the [description of land].

And I Promise and Agree To make all proper and necessary deeds to convey in fee simple to said Company, said Right of Way, as soon as said Railway is located on or across said described premises.

Pl. Mot. at Ex. P-BB.

## 2. Parcels Conveyed By "For Railroad Purposes" Agreements

Two parcels have been conveyed to Union Pacific via its predecessor-in-interest, the Burlington, Monmouth & Illinois River Railway Company, by agreements containing "for railroad purposes" language (parcels 44 and 47). Pl. Mem. at 20; Def. Mot. at 14.[3]  The agreement for parcel 44 states, in relevant part, that the grantors "convey and quitclaim to the Burlington Monmouth & Illinois River Railway Company for railroad purposes . . . all interest in

| 2/55: Ex. S | N. Williams | Blake T. Nebergall; Estate of Ethelyn Nebergall; Kent M. Nebergall; Phillip M. Nebergall; Jill M. Eklund; Bethany Wenger; Linda Pille; Judith D. Schmidgall; Tommy E. Trotter Revocable Trust; Daniel W. Arnold; Chester Hoffman & Catherine Schneider; Randall & Sonja S. Whitehurst |
| --- | --- | --- |
| 3/57: Ex. T | J.H. Pinkerton | Harold A. & Sara E. Passmore; Jacqueline R. Snowden Declaration of Trust & Richard Kent Snowden Declaration of Trust |
| 3/58: Ex. U | J.A. Pinkerton | Carol S. Newell; John E. & Tammi L. Murphy; Harold A. & Sara E. Passmore |
| 3/59: Ex. V | L.K. Gooding | Virgil D. Janssen; Donald P. & Deb Wallengfang |
| 3/74: Ex. W | J.M. Hart | James W. Hart, Jr. |
| 4/80: Ex. X | J. B. Patton | Raymond D. & Dortha Ryer |
| 4/83: Ex. Y | G.W. DuMars | Kent L. Hudson |
| 5/91: Ex. Z | J. Larkin | Janet K. Beecher |
| 5/98: Ex. AA | W.T. Bell | John T. & Betty L. Fegan; Dale & Jean Peterson |
| 5/102: Ex. BB | D. Downes | Michael Redlingshafer, Estate of Audrey Redlingshafer, Estate of John Redlingshafer |

[3] **Table 2: Parcels Conveyed By "For Railroad Purposes" Agreements**

| NARA Map/Parcel: Pl. Exhibit No. | Grantor | Affected Plaintiffs |
| --- | --- | --- |
| 2/44: Ex. DD | J. Borland et al. | Francis H. Roark, Jr.; William & Faith Bryan; Leroy G. & Patricia A. Hagenbuch |
| 2/47: Ex. EE | R.C. Goodrich | Andre L. Garrison; Donald L. & Suzanne K. Holmes; Roland B. & Kathryn E. Polhemus; Richard C. & Donna J. Vogel; Leamon C. Smith; Corwin E. Storer & Nicole L. Mauser-Storer |

the following described real estate, to wit: a strip of land . . . ."  Pl. Mot. at Ex. DD.  The agreement for parcel 47 states, in relevant part, that the grantors "convey and warrant for railroad purposes to the Burlington Monmouth & Illinois River Railway Company . . . the following described real estate, to wit: a strip of land . . . ."  Pl. Mot. at Ex. EE.

### 3.  Parcels Without A Conveying Instrument

In addition, plaintiffs have not provided conveying instruments for three of the parcels in dispute (parcels 33, 87, 90).[4]  Pl. Mem. at 22; Def. Mot. at 16.

### 4.  Parcels Acquired Through Condemnation

Furthermore, the parties agree that one parcel has been acquired by a predecessor-in-interest to Union Pacific by condemnation (parcel 26).[5]  Pl. Mem. at 23-24; Def. Mot. at 17.

### 5.  Parcels Plaintiffs Held In Fee Simple

Lastly, the parties agree that plaintiffs owned parcel 29 and the Illinois Route 116 parcel in fee simple at the time the Surface Transportation Board issued the NITU on November 13, 2008.[6]  Def. Mot. at 1; Pl. Mem. at 20, 26.

---

[4] **Table 3: Parcels Without A Conveying Instrument**

| NARA Map/Parcel: Pl. Exhibit No. | Grantor | Affected Plaintiffs |
|---|---|---|
| 1/33: N/A | Clarke Coal & Coke Co. | Teresa G. Seymour; Tim Menefee |
| 4/87: Ex. FF | [left blank] | Marvin & Debra A. Swadinsky; Donna Mae Walker Declaration of Trust; The Donald Gronewold Trust; The Harold Lee Gronewold Declaration of Trust; Mary Jane Severt |
| 4/90: Ex. FF | Trivoli Township | Lonne E. Winters; Raymond N. & Jodie DePriest; Eleanor Jean Gronewold Declaration of Trust |

[5] **Table 4: Parcel Acquired Through Condemnation**

| NARA Map/Parcel: Pl. Exhibit No. | Grantor | Affected Plaintiffs |
|---|---|---|
| 1/26a: Ex. GG | Sarah Allen | Scott W. Hamilton |

[6] **Table 5: Parcels Plaintiffs Held In Fee Simple**

| NARA Map/Parcel: Pl. Exhibit No. | Grantor | Affected Plaintiffs |
|---|---|---|
| 2/29: Ex. CC | A. Royster | Estate of Hilda Stretch |
| Illinois Rte. 116 | John F. & Lena C. Borland; Charles H. & Sylvia Cameron | William & Faith A. Bryan; Francis H. Roark Jr. |

### C.      Procedural Background

On June 13, 2013, plaintiffs filed a complaint, alleging a Fifth Amendment takings claim against the United States, which plaintiffs subsequently amended on March 20, 2014, and on July 23, 2014.  *See generally* Pl. Comp.; 1st Am. Compl.; 2nd Am. Compl.  On October 3, 2014, the Court issued an Order certifying an opt-in class under RCFC 23, which includes all persons owning an interest in the Railroad Line.  *See generally* October 3, 2014 Order; *see* RCFC 23.

On November 14, 2014, plaintiffs filed a motion for partial summary judgment on the question of whether a permanent or temporary takings has occurred with respect to 21 of the 51 parcels listed in their complaint.  Pl. Mot. at 4-5.  On January 29, 2015, defendant filed a cross-motion for partial summary judgment on this question, arguing that no compensable takings has occurred.  *See generally* Def. Mot.  On March 2, 2015, plaintiffs filed a reply in support of their motion for partial summary judgment and a response in opposition to defendant's cross-motion for partial summary judgment.  *See generally* Pl. Opp.  On April 13, 2015, defendant filed a reply in support of its cross-motion for partial summary judgment.  *See generally* Def. Rep.  On May 7, 2015, plaintiffs filed a motion requesting oral argument.  *See generally* Pl. Mot. for Oral Arg.

## II.     Legal Standards

### A.      Jurisdiction

The Tucker Act grants this Court jurisdiction over Fifth Amendment takings claims against the United States.  *See* 28 U.S.C. § 1491; *Morris v. United States*, 392 F.3d 1372, 1375 (Fed. Cir. 2004) ("[T]he Tucker Act provides the Court of Federal Claims exclusive jurisdiction over takings claims for amounts greater than $10,000.").

### B.      Summary Judgment

A grant of summary judgment is appropriate when the pleadings, affidavits and evidentiary materials filed in a case reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  RCFC 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Biery v. United States*, 753 F.3d 1279, 1286 (Fed. Cir. 2014).  A dispute is "genuine" when "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  A fact is "material" if it could "affect the outcome of the suit under the governing law . . . ." *Id.*

In resolving motions for summary judgment, the Court will not make credibility determinations and will draw all inferences "'in the light most favorable to the party opposing the motion.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).  In doing so, the Court does not weigh the evidence presented, but instead must "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *Agosto v. INS*, 436 U.S. 748, 756 (1978) ("[A trial] court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented . . . ."); *see also Am. Ins. Co. v. United States*, 62 Fed. Cl. 151, 154 (2004). And so, the Court may only grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party . . . ." *Matsushita*, 475 U.S. at 587.

The above standard applies when the Court considers cross-motions for summary judgment. *Principal Life Ins. Co. & Subsidiaries v. United States*, 116 Fed. Cl. 82, 89 (2014); *see also Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 40 (1st Cir. 2010).  And so, when both parties move for summary judgment, "'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Abbey v. United States*, 99 Fed. Cl. 430, 436 (2011) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

## C.    The National Trails System Act

The Interstate Commerce Act of 1887, ch. 104, 24 Stat. 379, and the Transportation Act of 1920, ch. 91, 41 Stat. 477–78, granted the Interstate Commerce Commission, now the Surface Transportation Board, exclusive authority over the construction, operation and abandonment of the Nation's rail lines.  *See Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 321 (1981).  In order for a railroad company to terminate rail service, the railroad company must obtain the consent of the Surface Transportation Board.  *See Barclay v. United States*, 443 F.3d 1368, 1371 (Fed. Cir. 2006), *cert. denied*, 549 U.S. 1209 (2007).  To obtain such consent, the railroad company may apply for permission to discontinue service, seek permission to terminate through abandonment proceedings, or file a request for an exemption from abandonment

proceedings.  *See* 49 U.S.C. § 10903(d)(1)-(2) (2012); *Barclay*, 443 F.3d at 1371.  Once the Surface Transportation Board consents, the rail line is removed from the national transportation system and the Surface Transportation Board's jurisdiction comes to an end.  *Id*.

In 1983, Congress amended the National Trails System Act to include an alternative process for railroad companies to abandon rail lines.  16 U.S.C. § 1247(d); *Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1, 5-6 (1990) ("*Preseault I*"); *Caldwell v. United States*, 391 F.3d 1226, 1229 (2004) ("*Caldwell II*").  This process, known as "railbanking," preserves corridors or rights-of-ways not in use for train service for possible future use as recreational trails.  *Id*.

In order for a rail line to be "railbanked," the railroad company must first file an abandonment application under 49 U.S.C. § 10903 (2002), or a notice of exemption from that process under 49 U.S.C. § 10502 (2012).  Once an abandonment application, or request for an exemption, is filed, a party interested in railbanking may request the issuance of a certificate of interim trail use ("CITU") (in abandonment application proceedings) or a NITU (in abandonment exemption proceedings).  49 C.F.R. §1152.29(c)-(d).  If the railroad company indicates that it is willing to negotiate a railbanking and interim trail use agreement, the Surface Transportation Board issues the CITU or NITU.  *Id*.  The issuance of the CITU or NITU preserves the Surface Transportation Board's jurisdiction over the rail line and allows the railroad company to discontinue operations and remove track and equipment while the parties negotiate a railbanking and interim trail use agreement.  *Id.*; *Macy Elevator, Inc. v. United States*, 97 Fed. Cl. 708, 711-12 (2011).

The NITU or CITU affords the railroad company 180 days in which to negotiate a railbanking and interim trail use agreement with the third party.  49 C.F.R. § 1152.29(c)(1), (d)(1); *Caldwell II*, 391 F.3d at 1229-30, 1233.  "If an agreement is reached, the NITU [or CITU] automatically authorizes the interim trail use.  If the [Surface Transportation Board] takes no further action, the trail sponsor then may assume management of the right-of-way, subject only to the right of a railroad to reassert control of the property for restoration of rail service."  *Caldwell v. United States*, 57 Fed. Cl. 193, 195 (2003) aff'd, 391 F.3d 1226 (Fed. Cir. 2004) (*Caldwell I*) (internal citations omitted); *see also* 16 U.S.C. § 1247(d); 49 C.F.R. § 1152.29(d)(2).  If no agreement is reached, the railroad company may proceed with the abandonment process.  49 C.F.R. §§ 1152.29(d)(1), (e)(2).

## D.      Fifth Amendment Takings And "Rails-to-Trails" Cases

A Fifth Amendment takings occurs in rails-to-trails cases when the government, through the issuance of a CITU or NITU, destroys an individual's state law reversionary interest in property underlying a railroad right-of-way. *Ladd v. United States*, 630 F.3d 1015, 1023-24 (Fed. Cir. 2010); *Barclay*, 443 F.3d at 1374 ("The issuance of the NITU is the only event that must occur to 'entitle the plaintiff to institute an action.'  Accrual is not delayed until a trail use agreement is executed or the trail operator takes physical possession of the right-of-way." (internal citations omitted)); *Caldwell I*, 391 F.3d at 1233–34.  "[O]nly persons with a valid property interest at the time of the taking are entitled to compensation."  W*yatt v. United States*, 271 F.3d 1090, 1096 (Fed. Cir. 2001).

To determine whether a Fifth Amendment takings has occurred in a rails-to-trails case, the Court follows a three-part analysis established by the United States Court of Appeals for the Federal Circuit.  *See Ellamae Phillips Co. v. United States*, 564 F.3d 1367, 1373 (Fed. Cir. 2009) (citing *Preseault v. United States*, 100 F.3d 1525, 1533 (1996) ("*Preseault II*")).  First, the Court must determine who owned the land at issue at the time of the takings; and specifically whether the railroad company owned the land in fee simple or held only an easement.  *Id*.  Second, if the railroad company owned only an easement, the Court must determine whether the terms of the easement are limited to use for railroad purposes, or whether the terms include use as a public recreational trail.  *Id*.  Third, if the railroad company's easement is broad enough to encompass recreational trail use, the Court must determine whether the easement terminated prior to the alleged takings, so that the property owner held a fee simple estate unencumbered by easement at the time of the takings.  *Id*.

To determine whether the railroad company held an easement, or held the property in fee simple at the time of the takings, the Court must look to the law of the state in which the property is located.  *Preseault II*, 100 F.3d at 1540.  Because the Railroad Line is located in Illinois, Illinois state law applies in this case.  2nd Am. Compl. at 2; *Preseault I*, 494 U.S. at 20-21.

Under Illinois law, agreements should be construed in a manner that fulfills the intention of the parties.  *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. v. Cent. Ill. Public Serv. Co.*, 43 N.E.2d 993, 996 (Ill. 1942).  This intention should be ascertained by reading the agreement as a whole, and every word and clause within the agreement should be considered and given full

effect if possible.  *Keen v. Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.*, 64 N.E.2d 499, 502-03 (Ill. 1945); *Tallman v. E. Ill. & Peoria R.R. Co.*, 41 N.E.2d 537, 539 (Ill. 1942); *Sowers v. Illinois Cent. Gulf R.R. Co.*, 503 N.E.2d 1082, 1084 (Ill. App. Ct. 1987).  "Absent an ambiguity in the deed, the intention of the parties must be discerned solely from the language of the instrument, without consideration of extrinsic factors."  *Urbaitis v. Commonwealth Edison*, 575 N.E.2d 548, 552 (Ill. 1991) (citing *Shelton v. Andres*, 478 N.E.2d 311, 314 (Ill. 1985)).

Additionally, under Illinois law, determining whether an agreement grants an easement or a fee simple estate requires "construction of the instrument to determine whether the granting clause conveys a designated piece of land or whether it refers to a right or privilege with respect to the piece of land."  *Penn Cent. Corp. v. Commonwealth Edison Co.*, 512 N.E.2d 118, 119 (Ill. App. Ct. 1987) (citing *McVey v. Unknown Shareholders of Inland Coal & Washing Co.*, 427 N.E.2d 215, 217 (Ill. App. Ct. 1981)).  Generally speaking, an instrument containing the words "convey and warrant" is deemed to convey a fee simple estate.  *Urbaitis*, 575 N.E.2d at 552 (citing *Tallman*, 41 N.E.2d at 543).  However, an instrument that grants simply a "right" in a parcel of land is deemed to convey only an easement.  *Urbaitis*, 575 N.E.2d at 552 (citing *Magnolia Petroleum Co. v. West*, 30 N.E.2d 24, 26 (Ill. 1940)).

In addition to the above common law rules of construction, the Illinois Legislature has enacted the Conveyance Act, which sets forth the default rules for conveyances of property.  765 Ill. Comp. Stat. Ann. 5/0.01-5/39 (1990).  Specifically, section 13 of the Conveyance Act provides that "[e]very estate in lands which shall be granted, conveyed or devised, although other words heretofore necessary to transfer an estate of inheritance be not added, shall be deemed a *fee simple estate of inheritance*, if a less estate be not limited by express words, or do not appear to have been granted, conveyed or devised by construction or operation of law."  765 Ill. Comp. Stat. Ann. 5/13 (1985) (emphasis added).  Section 19 of the Conveyance Act also authorizes railroad companies to "take and hold such voluntary grants of real estate and other property as shall be made to it, in aid of the construction and use of its railway, and to convey the same when no longer required for the uses of such railway, not incompatible with the terms of the original grant."  610 Ill. Comp. Stat. Ann. 5/19 (1985).  This authorization has been interpreted by Illinois state courts to permit "railroad corporations to take title in fee simple to lands conveyed to it."  *Keen*, 64 N.E.2d at 505.

III.     LEGAL ANALYSIS

The parties' cross-motions for partial summary judgment present three key questions: First, what was the nature of the property interest held by Union Pacific in the 21 parcels in dispute at the time that the Surface Transportation Board issued the NITU?  Second, in the event that Union Pacific held an easement to any of the relevant parcels, was the scope of the easement exceeded by the issuance of the NITU?  Lastly, if the scope of any easement has been exceeded, did a temporary or permanent takings occur?

For the reasons discussed below, the undisputed material facts show that Union Pacific held  the 13 parcels conveyed by "right-of-way" agreements and the two parcels conveyed by "for railroad purposes" agreements in fee simple when the Surface Transportation Board issued the NITU.  The undisputed material facts also demonstrate that plaintiffs have not met their burden of proof to show that they held cognizable property interests in the three parcels for which plaintiffs have not provided conveying instruments.

A material fact remains in dispute with respect to the ownership of the single parcel acquired by Union Pacific through condemnation.

In addition, the undisputed material facts also show that plaintiffs held parcel 29 and the Illinois Route 116 parcel in fee simple, and that Union Pacific held only an easement in these parcels, when the Surface Transportation Board issued the NITU.  In this regard, the undisputed material facts also show that the scope of the easements held by Union Pacific had been exceeded when the Surface Transportation Board issued the NITU.

And so, the Court **DENIES** plaintiffs' motion for partial summary judgment and **GRANTS** defendant's motion for partial summary judgment with respect to the 13 parcels conveyed to Union Pacific by "right-of-way" agreements and the two parcels conveyed to Union Pacific by "for railroad purposes" agreements.  Because plaintiffs fail to meet their burden of proof with respect to the three parcels for which plaintiffs have not provided conveying instruments, the Court **DENIES** plaintiffs' motion for partial summary judgment and **GRANTS** defendant's motion for partial summary judgment with respect to these parcels.  In addition, the Court **DENIES** both parties' motions for partial summary judgment with respect to the parcel acquired by condemnation.  Finally, the Court **GRANTS** in part plaintiffs' motion for partial

summary judgment and **DENIES** in part defendant's motion for partial summary judgment, with respect to parcel 29 and the Illinois Route 116 parcel.

### A.    Nature Of The Parties' Property Interest

In "rails-to-trails" takings cases, the Court must decide as a threshold matter, whether the railroad company in question held the disputed property in fee simple under applicable state law at the time of the takings. *Preseault II*, 100 F.3d at 1533. And so, the Court begins the analysis here by addressing whether Union Pacific held a fee simple interest in any of the parcels in dispute when the Surface Transportation Board issued the NITU.

#### 1.    Parcels Conveyed By "Right-of-Way" Agreements

The undisputed material facts show that Union Pacific held the 13 parcels conveyed to the Burlington, Monmouth & Illinois River Railway Company by "right-of-way" agreements in fee simple when the Surface Transportation Board issued the NITU.[7] In this regard, the parties agree that the conveyance language for the 13 parcels is identical and provides, in pertinent part, that:

> RIGHT OF WAY
>
> In Consideration Of the benefits to be derived from the location and building of the Burlington, Monmouth & Illinois River Railway and One Dollar to me in hand paid by said Railway Company, the receipt whereof is hereby acknowledged, I do hereby **grant and convey** unto the said Burlington, Monmouth & Illinois River Railway **the Right of Way** for said Railway, four rods wide, **over and across** the [description of land].
>
> And I Promise and Agree To make all proper and necessary deeds **to convey in fee simple** to said Company, **said Right of Way**, as soon as said Railway is located **on or across** said described premises.

Pl. Mot. at Ex. P-BB (emphasis added).

The plain language of the right-of-way agreement shows that the agreement conveys a fee simple estate. The agreement provides in pertinent part that "I do hereby **grant and convey** unto the said Burlington, Monmouth & Illinois River Railway **the Right of Way** for said

---

[7] Although the 21 parcels were originally conveyed to various other railroad companies, Union Pacific, as the successor-in-interest, holds the same property interest in the parcels as held by its predecessor. *Penn Cent. Corp.*, 512 N.E.2d at 121 (successors-in-interest are granted a fee simple title in land if fee simple title was conveyed to their predecessor-in-interest).

Railway . . . And I Promise and Agree To make all proper and necessary deeds **to convey in fee simple** . . . **said Right of Way** . . . ." *Id*. (emphasis added).  Under Illinois state law, there is a rebuttable presumption that real property that is conveyed by an agreement containing the word "covey"−as is the case here−conveys that property in fee simple.  765 Ill. Comp. Stat. Ann. 5/13 (1985); *see also Keen*, 64 N.E.2d at 502-03; *Sowers*, 503 N.E.2d at 1085.  This presumption can be overcome if a contrary intent is clearly expressed in the agreement.  *Id*.  And so, the Court presumes here that the right of way agreement conveyed a fee simple estate in the 13 parcels to Union Pacific, unless there is other language in the agreement to rebut this presumption.  *Keen*, 64 N.E.2d at 502; *Tallman*, 41 N.E.2d at 539; *Sowers*, 503 N.E.2d at 1085.

Plaintiffs point to the words "right-of-way" and "across," which appear in the agreement, to argue that there was no intent to convey a fee simple estate to Union Pacific.  Pl. Mem. at 17-18.  Plaintiffs' reliance upon these words to rebut the presumption that a fee simple estate has been conveyed to Union Pacific is, however, misplaced.

First, Illinois state courts have interpreted the words "right-of-way" to rebut the presumption that agreements convey real property in fee simple, under certain circumstances. *Tallman*, 41 N.E.2d at 540.  Specifically, when the words "right-of-way" are used in an agreement conveying real property to indicate the *nature of the property* interest being conveyed, Illinois state courts have held that such agreements convey only an easement.  *Id*.  On the other hand, Illinois state courts have held that when the words "right-of-way" are used *to describe the parcel* being conveyed−rather than the property interest being conveyed−these words do not limit the fee simple estate conveyed.  *Keen*, 64 N.E.2d at 503; *Sowers*, 503 N.E.2d at 1086 (The phrase "right of way" "in the consideration clause cannot be construed to limit the estate conveyed."); *see also Urbaitis*, 575 N.E.2d at 553 ("[T]here is no per se rule that the mere inclusion of the term 'right-of-way' in any deed to a railroad negates the possibility that title in fee simple was conveyed.").

A plain reading of the agreement at issue here makes clear that the words "right-of-way" do not limit the estate conveyed to Union Pacific.  Rather, these words describe the 13 parcels that have been conveyed to Union Pacific.  *See* Pl. Mot. at Ex. P-BB; s*ee also Keen*, 64 N.E.2d at 503; *Sowers*, 503 N.E.2d at 1086; Pl. Mot. at Ex. P-BB.  In this regard, the agreements are entitled "RIGHT OF WAY" and provide in two places that the grantors convey the "Right of

Way."  Pl. Mot. at Ex. P-BB.  By entitling the agreement "RIGHT OF WAY" the parties have demonstrated their intent to use this phrase to describe the parcels to be conveyed to the railroad company.  *Id*.  This intent to describe the parcels−rather than to limit the estate conveyed−is further evidenced by the language in the agreement that provides that the grantor intends "to convey in fee simple."  *Id*.  In fact, to read the right-of-way agreement to limit the fee simple estate granted by this clause would require the Court to interpret the agreement in a manner contrary to the parties' express intent to convey the parcels in fee simple.  And so, the Court must read the agreement as a whole and conclude that the words "right-of-way" do not limit the fee simple estate conveyed to Union Pacific in this case.

The word "across" similarly does not limit the estate conveyed to the railroad company.  As discussed above, the agreement provides in pertinent part that:

> I do hereby grant and convey unto the said Burlington, Monmouth & Illinois River Railway the Right of Way for said Railway, four rods wide, **over and across** the [description of land].

> And I Promise and Agree To make all proper and necessary deeds to convey in fee simple to said Company, said Right of Way, as soon as said Railway is located **on or across** said described premises.

Pl. Mot. at Ex. P-BB (emphasis added).  Illinois state courts have held that the word "across" may limit the estate conveyed to something less than a fee simple estate, under certain circumstances.  *Tallman*, 41 N.E.2d at 539; *Spierling v. Ohl*, 83 N.E. 1068, 1069 (Ill. 1908).  But, Illinois state courts have specifically held that the word "across" does not limit the estate conveyed when it is being used to simply describe the property at issue.  *Penn Cent. Corp.*, 512 N.E.2d at 120 ("We find that the use of the words 'over', 'across', and 'through' is merely descriptive of the estate conveyed and does not constitute a limitation on the use of the land.  In addition, we find that the other language in the deed, such as the phrase 'a strip of land,' is clear and unambiguous in purporting to convey the land itself in fee simple.").

Here, a plain reading of the agreement shows that the word "across" is intended to describe where the parcel being conveyed is located.  Pl. Mot. at Ex. P-BB.  In both instances where the word "across" appears in the agreement, this word precedes a detailed description of the parcels conveyed to the railroad company.  *Id*.  And so, reading the right-of-way agreement as a whole shows that the parties intended the word "across" to describe the parcels conveyed to the railroad company.  For this reason, there is nothing in the right-of-way agreement to rebut the

presumption under Illinois state law that the parties to these agreements intended to convey the parcels to the railroad company in fee simple.[8]  *See King v. Lee*, 118 N.E. 724, 726 (Ill. 1918) ("It is well settled that, where real property is conveyed in fee restrictions in the use are not favored . . . .").

Because the right-of-way agreement conveys a fee simple estate under Illinois law, plaintiffs could not have held any of the 13 parcels conveyed by right-of-way agreements in fee simple at the time the Surface Transportation Board issued the NITU.  And so, plaintiffs' motion for partial summary judgment as to parcels 23, 37, 51, 55, 57, 58, 59, 74, 80, 83, 91, 98, and 102 must be denied.  For the same reasons, defendant's cross-motion for partial summary judgment with respect to these parcels is granted.

## 2.     Parcels Conveyed By "For Railroad Purposes" Agreements

The undisputed material facts also show that when the Surface Transportation Board issued the NITU, Union Pacific held parcels 44 and 47 in fee simple.  The agreements transferring these parcels contain the phrase "for railroad purposes," which plaintiffs maintain limits the estate conveyed to an easement.  Pl. Mot. at Ex. DD, Ex. EE; Pl. Mem. at 20-21.  For the reasons discussed below, the Court disagrees.

With respect to parcel 44, the agreement conveying this parcel provides, in pertinent part, that the grantor does "**convey** and quitclaim to the Burlington Monmouth & Illinois River Railway Company **for railroad purposes** . . . all interest" in the parcel.  Pl. Mot. at Ex. DD (emphasis added).  The agreement for parcel 47 provides in pertinent part that the grantor does "**convey** and warrant **for railroad purposes** to the Burlington Monmouth & Illinois River Railway Company" the parcel.  Pl. Mot. at Ex. EE (emphasis added).

As established above, the use of word "convey" creates a rebuttable presumption that the parcels are being conveyed in fee simple under Illinois law.  765 Ill. Comp. Stat. Ann. 5/13

---

[8] Although no deeds were located granting the parcels to the railroad company in fee simple, the property owner's covenant to convey the parcels in fee simple runs with the land regardless of whether the parties have the deeds memorializing such a conveyance.  *Purvis v. Shuman*, 112 N.E. 679, 682 (Ill. 1916) (covenants that run with the land are those that "concern[] the lands and the enjoyment of it"); *Louisville & Nashville R.R. Co. v. Illinois Central R.R. Co.*, 51 N.E. 824, 825 (Ill. 1898) (covenant allowing a railroad company a right-of-way over a railroad line runs with the land).

(1985); *see Keen*, 64 N.E.2d at 504 ("deed conveying to a railroad company 'a strip of land,' in the absence of any limitation in the deed upon the estate conveyed, conveys fee-simple title to the 'strip of land' described."); *Penn Cent. Corp*, 512 N.E.2d at 119-20. And so, the question for the Court to resolve is whether the words "for railroad purposes" limit the estate conveyed to Union Pacific. *Sowers*, 503 N.E.2d at 1084-86.

A plain reading of the two agreements shows that the words "for railroad purposes" do not limit the estate conveyed to Union Pacific. Although the Court is not aware of any Illinois state cases that have interpreted the meaning of the phrase "for railroad purposes," within the context of an agreement conveying real property to a railroad company, Illinois state courts have addressed the meaning of similar language. In *Keen v. Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.*, the Supreme Court of Illinois held that the words "for the purpose of facilitating the construction and completion" of the railroad line do not limit the conveyance, because the language is "merely the expression of the considerations which prompted the grantor to execute the deed. . . ." *Keen*, 64 N.E.2d at 503. Similarly, in *Sowers v. Illinois Cent. Gulf R.R. Co.*, the Fifth District Appellate Court of Illinois also held that the words "to construct their Railroad" do not limit the estate conveyed to something less than a fee simple estate. *Sowers*, 503 N.E.2d at 1086. For this reason, the court concluded that, when "reference is made to the purpose of the grant as enabling the grantee to construct a railroad on the subject property, this did not limit the estate conveyed to be a mere easement for use as a railroad right of way." *Sowers*, 503 N.E.2d at 1086. In addition, in *Penn Cent. Corp. v. Commonwealth Edison Co.*, the Third District Appellate Court of Illinois also held that the words "for the purpose of enabling the said Company to construct their said Road" do not limit the conveyance to the railroad company, because these words were "merely expressive of the purpose which motivated the grantor to make the conveyance." *Penn Cent. Corp.*, 512 N.E.2d at 119-20.[9]

The *Keen*, *Sowers* and *Penn Cent. Corp.* cases are instructive in determining the nature of the property interest conveyed to Union Pacific here. A plain reading of the agreements at issue

---

[9] Plaintiffs rely upon *Magnolia Petroleum Co. v. West*, 30 N.E.2d at 26 to support their argument that the "for railroad purposes" language in the agreements at issue here limits the estate conveyed to an easement. Pl. Mem. at 20-21; Pl. Opp. at 3-4. But in *Magnolia Petroleum*, the Supreme Court of Illinois found that the phrase "for railroad purposes" did not alone limit the conveyance. *Magnolia Petroleum Co.*, 30 N.E.2d at 25-27. Rather, the court relied upon other evidence to determine that the parties intended to convey only an easement in that case. *Id*.

in this case shows that the words "for railroad purposes" are intended to explain the reason for conveying parcels 44 and 47 was to operate a railroad line.  Pl. Mot. at Ex. DD, EE; *Keen*, 64 N.E.2d at 503; *Sowers*, 503 N.E.2d at 1086-87; *Penn Cent. Corp.*, 512 N.E.2d at 120.  Indeed, similar to the language at issue in *Penn Cent. Corp.*, the "for railroad purposes" language is "merely expressive of the purpose which motivated the grantor to make the conveyance."  *Penn Cent. Corp.*, 512 N.E.2d at 119-20.  And so, the words "for railroad purposes" do not serve to limit the fee simple estate transferred to Union Pacific.  765 Ill. Comp. Stat. Ann. 5/13 (1985); *Keen*, 64 N.E.2d at 504 ("deed conveying to a railroad company 'a strip of land,' in the absence of any limitation in the deed upon the estate conveyed, conveys fee-simple title to the 'strip of land' described.").[10]

Given this, the undisputed material facts show that Union Pacific held parcels 44 and 47 in fee simple when the Surface Transportation Board issued the NITU.  Plaintiffs' motion for partial summary judgment as to parcels 44 and 47 must, therefore, be denied.  For the same reasons, defendant's cross-motion for partial summary judgment with respect to these parcels is granted.

### 3.    Parcels Without A Conveying Instrument

In addition, plaintiffs have not met their burden to show that they held a cognizable property interest in parcels 33, 87 and 90 when the Surface Transportation Board issued the NITU.  The United States Court of Appeals for the Federal Circuit has held that "[i]t is plaintiffs' burden to establish cognizable property interests for purposes of their takings . . . claims." *Klamath Irrigation Dist. v. United States*, 635 F.3d 505, 519 n.12 (Fed. Cir. 2011); *see Burgess v. United States*, 109 Fed. Cl. 223, 237 (2013) (This burden of proof "requirement plainly applies to rails-to-trails cases."); *Estate of Hage v. United States*, 687 F.3d 1281, 1291 (Fed. Cir. 2012) ("It is the [plaintiffs'] burden to establish cognizable property interests for the purposes of their takings claims."); *Thomas v. United States*, 106 Fed. Cl. 467, 478 (2012).  And

---

[10] This conclusion is further supported by the language in the agreement for parcel 44, which conveyed "all of [the grantor's] interest" in the land. Pl. Mot. at Ex. DD.  This language indicates that no reversionary interest or right-of-re-entry has been preserved in the land if the Burlington, Monmouth & Illinois River Railway Company failed to use the land "for railroad purposes."  *Id.*; *Keen*, 64 N.E.2d at 503-04.

so, plaintiffs must show that they have cognizable property interests in these parcels in order to pursue their takings claims.

Plaintiffs have not satisfied their burden. In their motion for partial summary judgment, plaintiffs do not provide any documentation to show who owns parcels 33, 87 and 90, or how these parcels have been conveyed to Union Pacific. Pl. Memo. 21-23; Pl. Mot. at Ex. O, Ex. HH, Ex. FF; Def. Mot. at 15-17. Instead, plaintiffs put forward documents to show that certain plaintiffs own the land abutting the disputed parcels. *See* Pl. Mot. at Ex. M, Ex. L, Ex. F-K, Ex. O, Ex. FF, and Ex. HH.[11] This Court has held that, if the "evidence produced merely suggests that a right-of-way was transferred, but does not prove whether such an interest was, in fact, conveyed," plaintiffs have not met their burden of proof. *McClurg Family Farm, LLC v. United States*, 115 Fed. Cl. 1, 17-18 (2014). And so, plaintiffs have not shown that they have cognizable property interests in the disputed parcels. *Id.*

Nonetheless, plaintiffs point to this Court's "rails-to-trails" decision in *The Dana R. Hodges Trust v. United States*, to argue that they have provided sufficient evidence to meet their burden of proof. 101 Fed. Cl. 549 (2011); Pl. Mem. at 3. Plaintiffs' reliance upon the *Hodges* case is misplaced.

In *Hodges*, this Court held that plaintiffs met their burden of proof by providing valuation maps stating that there was "no deed" conveying the property, along with other deeds and tax records. *Hodges,* 101 Fed. Cl. at 560. But, the Court in *Hodges* specifically found that the reference to "no deed" in the valuation maps in that case indicated that the property had been acquired by adverse possession. *Id.* In contrast, here, the valuation maps put forward by plaintiffs contain no such language. Pl. Mot. at Ex. F-K. In fact, there is no evidence before the Court to even suggest that parcels 33, 87 and 90 have been acquired by adverse possession. *Id.*

Given this, the *Hodges* case is distinguishable from this matter and plaintiffs have simply not met their burden to show that they owned parcels 33, 87 and 90 in fee simple at the time that the Surface Transportation Board issued the NITU. *Id.* Plaintiffs' motion for partial summary

---

[11] Plaintiffs have provided the Court with the ICC Valuation Schedules (Pl. Mot. at Ex. L); the ICC Valuation Maps (Pl. Mot. at Ex. F-K); plaintiffs' subpoena to Union Pacific (Pl. Mot. at Ex. O); Union Pacific's response to plaintiffs' subpoena (Pl. Mot. at Ex. FF); the correspondence between plaintiffs' counsel and Union Pacific (Pl. Mot. at Ex. HH); and deeds, tax records, and maps (Pl. Mot. at Ex. M).

judgment as to these parcels must, therefore, be denied.  For the same reasons, defendant's cross-motion for partial summary judgment with respect to these parcels is granted.

### 4.      Parcel Acquired Through Condemnation

Because there are material facts in dispute as to the ownership of parcel 26, neither party has established that they are entitled to summary judgment with respect to this parcel.  Pl. Mem. at 23; Pl. Mot. at Ex. GG; Def. Rep. at 8.  In this regard, the parties agree that parcel 26 has been acquired by condemnation.  *Id*.  But, the parties disagree about which railroad company actually condemned the parcel and when the condemnation occurred.  *Id*.  As established below, the resolution of this factual dispute is material to resolving whether plaintiffs have a cognizable property interest in this disputed parcel.

Pursuant to the 1870 Illinois Constitution, a railroad company may only obtain an easement for property acquired through condemnation proceedings.  Ill. Const. 1870, art. II, § 13;  *Chicago & E. Ill. R.R. Co. v. Clapp*, 66 N.E. 223, 223 (Ill. 1903) ("Section 13 of article 2 of the Constitution of 1870 of Illinois provides that 'the fee of land taken for railroad tracks without consent of the owners thereof, shall remain in such owners subject to the use for which it is taken.'") (citations omitted).  But, prior to the adoption of the 1870 Illinois Constitution, a railroad company could acquire land conveyed by condemnation in fee simple.  *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.*, 43 N.E.2d at 996 ("The general condemnation laws in force prior to the adoption of the Constitution in 1870 provided that a railroad company in acquiring title for a right of way should take it in fee simple.").  And so, if a railroad company chartered prior to the adoption of the 1870 Illinois Constitution condemned parcel 26, it is at least possible that the acquired parcel could have been conveyed in fee simple.  On the other hand, if a railroad company chartered after the adoption of the 1870 Illinois Constitution condemned parcel 26, there can be no dispute that Union Pacific could have only acquired an easement in the parcel.

In their motion, plaintiffs maintain that the Iowa Central Railway Company, which formed after the adoption of the 1870 Illinois Constitution, condemned parcel 26.  Pl. Opp. at 7-8.  In contrast, the government argues that the Peoria and Farmington Railway, which incorporated before the adoption of the 1870 Illinois Constitution, obtained parcel 26 in fee

simple by condemnation.  Def. Rep. at 8.[12]  But, neither party has put forward evidence to establish which railroad company acquired parcel 26 by condemnation or when the condemnation occurred.  Because these factual questions are material to resolving the dispute over whether parcel 26 has been conveyed to Union Pacific in fee simple, the Court is unable to resolve this issue by summary judgment.  RCFC 56(a); *see Anderson*, 477 U.S. at 247-48; *Biery*, 753 F.3d at 1286.  And so, the parties' cross-motions for partial summary judgment on this issue must be denied.

### 5.    Parcels Plaintiffs Held In Fee Simple

Lastly, the undisputed material facts show that plaintiffs held parcel 29 and the Illinois Route 116 parcel in fee simple when the Surface Transportation Board issued the NITU.  In its motion for partial summary judgment, the government concedes that "the applicable conveyances ('deeds') by which Union Pacific's predecessor-in-interest acquired its interests in the portions of the subject corridor adjacent to these three claimants' properties only conveyed an easement to the railroad under applicable Illinois state law."  Def. Mot. at 1 n.1.  And so, there is no dispute that plaintiffs held these parcels in fee simple, and that Union Pacific held only an easement with respect to these parcels, when the Surface Transportation Board issued the NITU.

### B.    Scope Of Easement And Takings

Because there is no dispute that Union Pacific held an easement with respect to parcel 29 and the Illinois Route 116 parcel, the Court next turns to the question of whether the scope of the easement for those parcels has been exceeded by the issuance of the NITU.  *See Ellamae Phillips Co.*, 564 F.3d at 1373; *see also Preseault II*, 100 F.3d at 1533.  To make this determination, the Court looks to whether the terms of the easement are limited to use for railroad purposes, or

---

[12] While the Illinois Supreme Court has declined to consider whether the 1870 Constitution applies retroactively to a railroad charter incorporated before 1870, the United States Court of Appeals for the Seventh Circuit has found that the relevant portions of the 1870 Constitution have no retroactive effect. *Marathon Oil Co. v. Heath*, 358 F.2d 34, 37 n.6 (7th Cir. 1966) ("Section 13 of article II of the Illinois constitution, S.H.A., adopted in 1870, effected a change in the condemnation power of railroads from that granted by the statutes we have discussed by providing that railroads may acquire no more than an easement over the right of way taken. This change had no retroactive effect.") (internal citations omitted); *Peoria & R.I. Ry. v. Birkett*, 62 Ill. 332, 337 (1872) ("We do not decide as to the effect of the constitution upon the charter of the company . . . .").  And so, it appears that the Peoria and Farmington Company could have acquired the parcel in fee simple. *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.*, 43 N.E.2d at 996; *see also Marathon Oil Co.*, 358 F.2d at 37 n.6.; *Peoria & R.I. Ry.*, 62 Ill. at 337.

whether the terms include use as a public recreational trail. *Id*. In this regard, if the terms of the easement are limited to use for railroad purposes, the issuance of the NITU would exceed the scope of the easement. *Id*.; *see Duresa v. Commonwealth Edison Co.*, 807 N.E.2d 1054, 1063 (Ill. App. Ct. 2004).

The government does not contest that the issuance of the NITU in this case exceeded the scope of the easements for parcel 29 and the Illinois Route 116 parcel. Def. Mot. at 1 n.1, 27-30, App. A. And so, the remaining question before the Court is whether a temporary or permanent takings of these parcels has occurred. *Caldwell II*, 391 F.3d at 1234.

In order to resolve this question, the Court must ascertain, among other things, whether the NITU in this matter has expired and, if so, whether a railbanking and interim trail use agreement is in place. *Caldwell II*, 391 F.3d at 1234; *Preseault II*, 100 F.3d at 1552. The parties have stated the NITU at issue in this matter was set to expire on April 26, 2015. Pl. Mot. at 3; Def. Mot. at 7. But, the parties have not informed the Court of the current status of the NITU, or stated whether a railbanking and interim trail use agreement is currently in place. *Id*.; Def. Mot. at 7; *see generally* Pl. Opp.; Def. Rep.

If the NITU has in fact expired and has been converted to a notice of abandonment, a temporary takings may have occurred. *Ladd*, 630 F.3d at 1025 ("where no trail use agreement is reached, the taking may be temporary" (internal citations omitted)); *Caldwell II*, 391 F.3d at 1234. On the other hand, if the Illinois Department of Natural Resources and Union Pacific have reached a railbanking and interim trail use agreement, a permanent takings may have occurred. *Caldwell II*, 391 F.3d at 1234; *Preseault II*, 100 F.3d at 1552; *see also Toews*, 376 F.3d at 1376.

Because information about the current status of the NITU will inform the Court's takings analysis, the Court will hold the question of whether there has been a temporary or permanent takings of parcel 29 and the Illinois Route 116 parcel in abeyance until the parties have provided the Court with information about the status of the NITU.

## IV.  CONCLUSION

In sum, at the time the Surface Transportation Board issued the NITU, the undisputed material facts show that Union Pacific held the 13 parcels conveyed by "right-of-way" agreements and the two parcels conveyed by "for railroad purposes" agreements in fee simple.

In addition, the undisputed material facts show that plaintiffs have not met their burden to establish that they held cognizable property interests in the three parcels for which they have provided no conveyance documents.  Furthermore, there are material facts in dispute regarding the nature of the property interest held by plaintiffs and by Union Pacific in the parcel acquired by condemnation.  Finally, the undisputed material facts show−and the parties agree−that plaintiffs held parcel 29 and the Illinois Route 116 parcel in fee simple at the time the Surface Transportation Board issued the NITU, and that the scope of the easement granted to Union Pacific in these parcels has been exceeded by the NITU.

For the foregoing reasons, the Court:

1.      **GRANTS** defendant's motion for partial summary judgment with respect to parcels 23, 33, 37, 44, 47, 51, 55, 57, 58, 59, 74, 80, 83, 87, 90, 91, 98, 102 and **DENIES** plaintiffs' motion for partial summary judgment with respect to these parcels;

2.      **GRANTS** in part plaintiffs' motion for partial summary judgment with respect to parcel 29 and the Illinois Route 116 parcel and **DENIES** in part defendant's motion for partial summary judgment with respect to these parcels; and

3.      **DENIES** plaintiffs' motion for partial summary judgment with respect to parcel 26 and **DENIES** defendant's motion for partial summary judgment with respect to this parcel.

The Court **HOLDS** in **ABEYANCE** the parties' cross-motions for partial summary judgment on the question of whether a permanent or temporary takings has occurred with respect to parcel 29 and the Illinois Route 116 parcel.

Because the Court holds this issue in abeyance, the Court also **DENIES** plaintiffs' motion for oral argument as moot.

The parties are directed to **FILE** a Joint Status Report on or before **September 22, 2015**, that shall state their views on the following issues:

a.      Whether a railbanking and interim trail use agreement is in place, or whether the NITU has expired, or has been extended.

b.      Whether discovery is needed to establish what railroad company acquired parcel 26 by condemnation and when the condemnation occurred.

      c.       In light of the Court's Memorandum Opinion and Order, how the parties propose to proceed with respect to resolving plaintiffs' claims regarding the remaining parcels identified in the complaint.

**IT IS SO ORDERED.**

                                  s/ Lydia Kay Griggsby           
                                LYDIA KAY GRIGGSBY
                                Judge