# In the United States Court of Federal Claims

No. 13-396L
(Filed: October 11, 2019)

|  |  |  |
|---|---|---|
| WILLIAM E. BARLOW, et. al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Rails-to-Trails; Fifth Amendment |
| v. | ) | Takings; Class Action; Settlement; |
| | ) | Fairness Hearing; RCFC 23(e). |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

*Steven M. Wald*, Counsel of Record, *Michael J. Smith*, Of Counsel, Stewart, Wald & McCulley LLC, Saint Louis, MO; *Thomas S. Stewart*, *Elizabeth G. McCulley*, Of Counsel, Stewart, Wald & McCulley LLC, Kansas City, MO; *J. Robert Sears*, Of Counsel, Baker Sterchi Cowden & Rice, LLC, Saint Louis, MO, for plaintiffs.

*Cynthia M. Ferguson*, Senior Litigator, *Jean E. Williams*, Deputy Assistant Attorney General, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I.    INTRODUCTION

Before the Court in this rails-to-trails takings case is the parties' proffered settlement agreement pursuant to Rule 23 of the Rules of the United States Court of Federal Claims ("RCFC"). Plaintiffs in this class action matter are Illinois landowners who allege a Fifth Amendment takings of their reversionary interest in certain real property underlying a railroad line owned by the Union Pacific Railroad Company, as a result of a Notice of Interim Trail Use issued by the Surface Transportation Board on November 13, 2008.

Following class certification and the Court's September 1, 2015, Memorandum Opinion and Order granting-in-part and denying-in-part the parties' cross-motions for partial summary judgment, plaintiffs moved to form several subclasses of plaintiffs and for entry of final judgment with respect to certain plaintiffs. On February 4, 2016, the Court granted-in-part

plaintiffs' motion for certification of subclasses of plaintiffs and for entry of judgment pursuant to RCFC 23(c)(5) and 54 and created a subclass comprised of 12 plaintiffs associated with 14 parcels of property who engaged in settlement discussions ("Subclass A") and a subclass comprised of the remaining plaintiffs in this class action (Subclass B").

On August 29, 2019, the parties jointly filed a motion for approval of notice to Subclass A members regarding a proposed class action settlement and requested that the Court set the date for a public fairness hearing under RCFC 23(e). *See generally* Joint Mot.  On September 4, 2019, the Court preliminarily approved the parties' proposed class action settlement and scheduled a fairness hearing. *See generally* Order, Sept. 4, 2019.  On October 10, 2019, the Court held the fairness hearing with the parties to discuss the settlement negotiated by the parties and to assess final approval of the parties' proposed settlement agreement. *See generally* Fairness Hearing Tr.  For the reasons discussed below, the Court **APPROVES** the settlement agreement negotiated by the parties.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.    Factual Background And Relevant Procedural History

In this rails-to-trails case, plaintiffs allege that the government has taken their real property situated along an abandoned railroad line located in Fulton and Peoria Counties, Illinois. 3rd Am. Compl. at ¶¶ 2-5.  Plaintiffs commenced this action on June 13, 2013. *See generally* Compl.  On October 3, 2014, the Court issued an Order certifying this matter as a class action pursuant to RCFC 23. *See generally* Certification Order, Oct. 3, 2014.  The certified class

---

[1] The facts recounted in this Memorandum Opinion and Order are taken from plaintiffs' third amended complaint ("3rd Am. Compl."); the Court's October 3, 2014, Order certifying this matter as a class action ("Certification Order, Oct. 3, 2014"); the Court's September 1, 2015, Memorandum Opinion and Order ("Memo. Opinion and Order, Sept. 1, 2015"); plaintiffs' motion for the creation of subclasses of plaintiffs and for entry of judgment ("Pl. Mot. for Subclasses"); the Court's February 4, 2016, Order certifying subclasses ("Certification Order, Feb. 4, 2016"); the parties' joint motion for approval of notice to Subclass A members regarding a proposed class action settlement and request to set the date for a public fairness hearing under Rule 23(e) ("Joint Mot."); the Court's September 4, 2019, Order granting the parties' joint motion and preliminarily approving the parties' proposed class action settlement for the purpose of allowing notice to be provided to the members of Subclass A ("Order, Sept. 4, 2019); the parties' September 27, 2019, joint status report representing that no subclass members indicated they wished to appear at the fairness hearing in person ("JSR"); plaintiffs' notice of class members' responses to class action settlement notice ("Responses"); and the October 10, 2019 fairness hearing ("Fairness Hearing Tr.").  Except where otherwise noted, the facts recited here are undisputed.

of plaintiffs in this case include all persons owning an interest in lands located along the railroad line between milepost 461.5 in Fulton County, Illinois and milepost 486.2 in Peoria County, Illinois.  *See generally id.*

On September 1, 2015, the Court issued a Memorandum Opinion and Order, which granted-in-part and denied-in-part, the parties' cross-motions for partial summary judgment on the issue of whether plaintiffs held a fee simple interest in their property on the date of the alleged takings.  *See* Memo. Opinion and Order, Sept. 1, 2015.  In that Memorandum Opinion, the Court held that:

1. Plaintiffs did not hold a fee simple interest with respect to certain parcels that were: (a) conveyed by "right-of-way" agreements (parcels 23, 37, 51, 55, 57, 58, 59, 74, 80, 83, 91, 98 and 102); (b) conveyed by "for railroad purposes" agreements (parcels 44 and 47); and (c) those without a conveying instrument (parcels 33, 87 and 90); and

2. Certain plaintiffs held a fee simple interest with respect to two parcels that the government acknowledges were held by plaintiffs in fee simple at the time of the alleged takings (parcel 29 and the Illinois Route 116 parcel).

*Id.* at 21-22.  In addition, the Court denied the parties' cross-motions for partial summary judgment with respect to a certain parcel that has been acquired by condemnation (parcel 26). *Id*. at 22.  The Court also held in abeyance the parties' cross-motions for partial summary judgment on the issue of whether a permanent or temporary takings has occurred with respect to the two parcels found to be held in fee simple by plaintiffs.  *Id.*

On January 20, 2016, plaintiffs moved to form several subclasses of plaintiffs and for entry of final judgment with respect to certain plaintiffs.  *See generally* Pl. Mot. for Subclasses. On February 4, 2016, the Court granted-in-part plaintiffs' motion and created a subclass comprised of 12 plaintiffs associated with 14 parcels of property who engaged in settlement discussions, Subclass A, and a subclass comprised of the remaining plaintiffs in this action, Subclass B.

After the Court preliminarily approved the parties' proposed class action settlement and scheduled a fairness hearing to discuss the terms of the settlement agreement, plaintiffs filed a joint status report representing to the Court that no Subclass A members requested to appear at the fairness hearing on September 27, 2019.  *See* JSR.  On October 8, 2019, counsel for plaintiffs

filed a notice of class members' responses to the class action settlement notice, which stated that no written objections had been submitted. *See* Responses. The Court held a telephonic fairness hearing on October 10, 2019. *See generally* Fairness Hearing Tr.

## III.    LEGAL STANDARDS

### A.  RCFC 23(e)

The approval of settlement agreements in certified class actions is governed by RCFC 23(e). RCFC 23(e) provides that, "[t]he claims . . . of a certified class may be settled . . . only with the [C]ourt's approval," and this rule also prescribes the requirements that must be satisfied for approval of a class settlement. Specifically, RCFC 23(e) provides that:

> (1) The [C]ourt must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>
> (2) If the proposal would bind class members, the [C]ourt may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
>
> (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
>
> (4) [Not used.]
>
> (5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the [C]ourt's approval.

RCFC 23(e)(1)-(5).[2] In making the determination regarding whether a proposed settlement is "fair, reasonable, and adequate" under RCFC 23(e), the Court looks to the "'paramount' twin elements of procedural and substantive fairness." *Courval, et. al., v. United States*, 140 Fed. Cl. 133, 139 (2018) (citing *Christensen v. United States*, 65 Fed. Cl. 625, 629 (2005)).

The Court has held that procedural fairness relates to "whether the settlement resulted from 'arms-length negotiations and whether plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *Id.* RCFC 23(e) also makes clear that substantive fairness relates to whether the settlement terms are "fair, reasonable, and adequate." RCFC 23(e)(2). While RCFC 23 does

---

[2] RCFC 23 is substantially similar to Rule 23 of the Federal Rules of Civil Procedure and decisions applying Fed. R. Civ. P. 23 are persuasive in this Court. *See Haggart v. United States*, 89 Fed. Cl. 523, 529 (2009) (citing *King v. United States*, 84 Fed. Cl. 120, 122 n.2 (2008)).

not provide a definitive list of the factors to be applied in determining whether a settlement negotiated by the parties is substantively fair, this Court has considered the following matters:

(1) The relative strength of plaintiffs' case in comparison to the proposed settlement, which necessarily takes into account:

    a. [t]he complexity, expense and likely duration of the litigation;

    b. the risks of establishing liability

    c. the risks of establishing damages;

    d. the risks of maintaining the class action through trial;

    e. the reasonableness of the settlement fund in light of the best possible recovery;

    f. the reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation;

    g. the stage of proceedings and the amount of discovery completed; [and]

    h. the risks of maintaining the class action through trial;

(2) The recommendation of the counsel for the class regarding the proposed settlement, taking into account the adequacy of class counsels' representation of the class;

(3) The reaction of the class members to the proposed settlement, taking into account the adequacy of notice to the class members of the settlement terms;

(4) The fairness of the settlement to the entire class; [and]

(5) The fairness of the provision for attorney fees.

*Daughin Island Prop. Owners Ass'n v. United States*, 90 Fed. Cl. 95, 102-103 (2009). A further consideration in reviewing the fairness of the parties' proposed settlement is "the interest in encouraging settlements, particularly in class actions, which are often complex, drawn out proceedings demanding a large share of finite judicial resources." *Courval*, 140 Fed. Cl. at 140 (citing *Christensen*, 65 Fed. Cl. at 629 (2005).

## B. RCFC 23(h)

Lastly, the award of attorneys' fees and costs are governed by RCFC 23(h). RCFC 23(h) provides that "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." RCFC 23(h). The Court has held that the inquiry in this vein is whether the agreed amount of fees and costs is a

reasonable approximation of the amount due under the statute.  *Raulerson v. United States*, 108 Fed. Cl. 675, 679 (2013).

## IV.    LEGAL ANALYSIS

In light of the aforementioned legal standards, the factual record and the representations of counsel during the fairness hearing held on October 10, 2019, the Court concludes that the proposed settlement is fair, reasonable and adequate.  And so, the Court **APPROVES** the parties' settlement agreement.

### A.    Fair Notice Was Provided To The Members Of Subclass A

As an initial matter, the Court finds that fair notice of the terms of the settlement agreement has been provided to all of the members of Subclass A.  RCFC 23(e)(1)(B) provides that the Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal."  RCFC 23(e)(1)(B).  In accordance with RCFC 23(e)(1)(B), the Court directed that notice regarding the terms of the proposed settlement be sent to all of the members of Subclass A on September 4, 2019.  *See* Order, Sept. 4, 2019.  The notice that was sent to all members of Subclass A informed the class members of their right to object to the proposed settlement under RCFC 23(e)(5), and that a fairness hearing was to be held on October 10, 2019, to determine if the settlement agreement should be approved.  Joint Mot. Ex. A; *see also* Fairness Hearing Tr.  During the fairness hearing, counsel for plaintiffs represented that he had no reason to believe that any member of Subclass A was not aware of the settlement, or not fully informed of the terms of the proposed settlement agreement.  *See generally* Fairness Hearing Tr.

After notice of the proposed settlement was sent to all of the members of Subclass A, counsel for plaintiffs represented to the Court that no member of Subclass A expressed an interest in attending the fairness hearing in person, and no member of Subclass A participated in the telephonic fairness hearing.  JSR; *see also* Fairness Hearing Tr.  Counsel for plaintiffs also represented to the Court that no written objections to the terms of the proposed settlement had been filed as of October 8, 2019, and plaintiffs' counsel later confirmed this representation at the fairness hearing.  Responses; *see generally* Fairness Hearing Tr.  And so, based upon the factual record and the representations of counsel at the fairness hearing, the Court concludes that fair notice has been provided to the members of Subclass A regarding the terms of the proposed settlement.

**B.      The Settlement Agreement Is Procedurally Fair**

The Court similarly finds that the settlement agreement reached in this case is procedurally fair.  Procedural fairness requires that the settlement "resulted from 'arms-length negotiations and . . . [that] plaintiffs' counsel . . . possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interest.'  *Courval, et al. v. United States*, 140 Fed. Cl. 133, 139 (2018) (citing *Christensen v. United States*, 65 Fed. Cl. 625, 629 (2005)).  In their joint motion for approval of notice to Subclass A members regarding a proposed class action settlement, counsel for the parties represent that settlement negotiations were supported by reports from an independent real estate appraiser that "helped to ensure the overall fairness of the settlement process."  Joint Mot. at 3-4, 8.  Counsel for both parties also represent that they engaged in arms-length negotiations over a long period of time and in a manner that gave no special preference to one class member.  Joint Mot. at 7-8.  During the settlement process, the parties filed numerous joint status reports apprising the Court of the parties' progress toward settlement.  *See, e.g.*, ECF Nos. 71, 72, 74, 76, 78, 80, 84-92, 94-98, 100-109, 114, 117.  Given this, the Court is satisfied that the ensuing settlement negotiation was conducted in good faith, without collusion, and with an interest in ultimately resolving the case by settlement.

The factual record before the Court also shows that class counsel acted as a zealous advocate for the class members throughout the course of this litigation.  The notice of proposed settlement sent to members of Subclass A provided a detailed explanation of how each class member's individual settlement was calculated, the appraisal process, the right to object to the settlement, and the amount of attorneys' fees and costs to be awarded.  *See generally* Joint Mot. Ex. A.  In addition, class counsel represented during the fairness hearing that he has expressed a willingness to provide to any requesting Subclass A member a copy of the representative appraisal that applies to their claim.  *See generally* Fairness Hearing Tr.; *see also* Joint Mot. at 5. Class counsel has also continued to prosecute the case despite the lengthy settlement process. And so, based upon the factual evidence presented by the parties, the Court is satisfied that the negotiations that produced the settlement agreement "resulted from 'arms-length negotiations and . . . [that] plaintiffs' counsel . . . possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interest.'  *Courval*, 140 Fed. Cl. at 139 (internal citations omitted).

### C.      The Settlement Agreement Is Substantively Fair

The Court also concludes that the terms of the settlement agreement are substantively fair.  Substantive fairness requires the Court to consider the balance of the likely costs and rewards of further litigation.  *Courval*, 140 Fed. Cl. at 140.  In their joint motion for approval of notice to Subclass A members regarding a proposed class action settlement, counsel for the parties represent to the Court that the joint appraiser conducted an independent appraisal of the representative properties that was sufficient to support settlement negotiations.  Joint Mot. at 3.  Class counsel represents that, prior to the appraisal, counsel identified unique parcels and the legal or factual issues that should be addressed in the appraisal process.  *Id.* at 4.  Counsel for the parties also represent that the appraiser and the parties agreed to group similarly situated properties and that the appraiser selected a representative sample from each category to appraise.  *Id.*  Counsel for the parties further represent that, after the appraisal of the representative properties, they reviewed and analyzed the appraiser's valuation conclusions and that the parties had the opportunity to submit questions or comments through counsel before approval of the final appraisal report.  *Id.*

Counsel for both parties also represent to the Court that they believe that the proposed settlement is fair, reasonable and adequate.  *Id.* at 7-8; RCFC 23(e)(2); *see also* Fairness Hearing Tr.  And so, the Court concludes that the terms of the settlement agreement are substantively fair.

### D.      The Attorneys' Fees And Costs Are Reasonable

Lastly, the Court concludes that attorneys' fees and costs to be awarded in the amount of $243,290.51 are reasonable.  Counsel for the parties represent that this amount includes $237,817.35 in attorneys' fees and $5,473.16 in costs.  Joint Mot. at 7.

During the fairness hearing, counsel for plaintiffs explained that two attorneys divided the work of class counsel in this matter and that these attorneys have submitted their timesheets and expenses to counsel for the government in order to negotiate attorneys' fees and costs, in accordance with the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970.  *See generally* Fairness Hearing Tr.; *see also* 42 U.S.C. § 4654(c).  Class counsel also represented during the fairness hearing that the rate of pay for attorneys' fees has been calculated based upon the basic rate of pay in the city where class counsel is located.  *See generally* Fairness Hearing Tr.  In addition, counsel for the parties represent that the amounts agreed to

under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 have been disclosed to the class members and that no objections have been received.  Joint Mot. at 7; *see also* Responses.  And so, the Court concludes that the attorneys' fees and costs to be awarded are reasonable.

## V.        CONCLUSION

For the foregoing reasons, the Court **APPROVES** the settlement agreement.  There being no just reason for delay, the Court directs the Clerk to enter judgment pursuant to RCFC 54(b) in the total amount of $456,542.18.

This amount consists of the following:

1. $136,800.00 in principal and $76,451.67 in interest through May 15, 2019 for Subclass A members; and

2. $237,817.35 in attorneys' fees and $5,473.16 in litigation costs to be awarded to class counsel pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970.

The judgment is payable to class counsel for distribution to the class according to the terms of this Memorandum Opinion and Order and the parties' settlement agreement.

**IT IS SO ORDERED.**


s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge