# In the United States Court of Federal Claims

No. 13-396L
Filed: November 13, 2020

| | | |
|---|---|---|
| WILLIAM E. BARLOW AND TWILA L. BARLOW, et al., | ) ) ) | |
| Plaintiffs, | ) ) ) | Rails-to-Trails; Fifth Amendment Takings; National Trails System Act; Illinois Law; Notice of Interim Trail Use |
| v. | ) ) | (NITU); Summary Judgment; RCFC 56. |
| THE UNITED STATES, | ) ) | |
| Defendant. | ) ) | |

*Steven M. Wald*, Counsel of Record, Stewart Wald & McCulley, LLC, Saint Louis, MO, for plaintiffs.

*Scott D. Bauer*, Counsel of Record, *Prerak Shah*, Deputy Assistant Attorney General, Environmental and Natural Resources Division, United States Department of Justice, Washington, DC, for defendant.

**MEMORANDUM OPINION AND ORDER**

GRIGGSBY, Judge

## I.    INTRODUCTION

Plaintiffs own property located adjacent to a railroad line operated by the Union Pacific Railroad Company in Illinois and they have brought this takings action against the United States pursuant to the National Trails System Act, 16 U.S.C. §§ 1241-51 (2012). Plaintiffs allege a Fifth Amendment takings of their reversionary interest in property underlying the railroad line right-of-way, as a result of the Surface Transportation Board's ("STB") issuance of a Notice of Interim Trail Use ("NITU") on November 13, 2008. The parties have filed cross-motions for summary judgment on title and liability issues with regards to 14 of the parcels at issue in this dispute, pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"). For the reasons set forth below, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** plaintiffs' motion for partial summary judgment on liability and **GRANTS-IN-PART** and **DENIES-IN-PART** the government's cross-motion for summary judgment.

II.     **FACTUAL AND PROCEDURAL BACKGROUND**[1]

A.      **Factual Background**

This "rails-to-trails" case involves an alleged takings of real property situated along an abandoned railroad line located between milepost 461.5 in Fulton County, Illinois and milepost 486.2 in Peoria County, Illinois (the "Railroad Line"). 3rd Am. Compl. at ¶ 3; Def. Mot. at 5. It is undisputed that plaintiffs owned the land abutting the Railroad Line on the date of the alleged takings. *See generally* Def. Mot. at 10 (showing that the government does not dispute that plaintiffs owned the land abutting the Railroad Line on the date of the alleged takings); *see also* Pl. Mem. at 8, 37; Pl. Ex. H. But, the parties disagree about whether plaintiffs or the railroad owned the property underlying the Railroad Line on that date. *Id.*

1.      **The Railroad Line**

As background, the Peoria and Farmington Railway constructed the Railroad Line between 1882 and 1883. Def. Mot. at 5. To construct the Railroad Line, the Peoria and Farmington Railway acquired property through conveyances, transfers, and condemnation. *Id.*

The Union Pacific Railroad Company ("Union Pacific") is the successor-in-interest to the Peoria and Farmington Railway, as well as to the Burlington, Monmouth & Illinois River Railway Company and the Iowa Central Railway Company, which also owned the Railroad Line at various times. *Id.*

On July 1, 2008, Union Pacific filed a petition for exemption from formal abandonment proceedings with the STB, which has exclusive authority over the construction, operation and abandonment of rail lines. *Id.* Based upon the mutual expression of interest by the Illinois Department of Natural Resources and Union Pacific, the STB issued a NITU for the Railroad Line on November 13, 2008. 3rd Am. Compl. at ¶ 50; Def. Mot. at 5-6; Pl. Ex. J at 12-14.

---

[1] The facts recited in this Memorandum Opinion and Order are taken from plaintiffs' third amended complaint ("3rd Am. Compl."); plaintiffs' motion for partial summary judgment on liability ("Pl. Mot."), the memorandum in support thereof ("Pl. Mem.") and the exhibits attached thereto ("Pl. Ex."); the government's response and opposition to plaintiffs' motion for partial summary judgment on liability and cross-motion for summary judgment ("Def. Mot.") and the exhibits attached thereto ("Def. Ex."). Except where otherwise noted, the facts recited herein are undisputed.

Although the NITU was originally set to expire on May 12, 2009, the STB has granted several extensions of its expiration date.  Def. Ex. A at 1.  The most recent extension of the NITU is set to expire on March 30, 2021.  *Id.* at 2.

### 2.    The Disputed Parcels

Plaintiffs identify 51 parcels of land located along the Railroad Line that they allege the government has taken without just compensation.  *See generally* 3rd Am. Compl.  The parties address 14 of these parcels in their cross-motions for summary judgment.  *See generally* Pl. Mot.; Def. Mot.

The 14 parcels can be grouped into four categories:  (1) parcels conveyed by "Right-of-Way" agreements; (2) parcels conveyed by "For Railroad Purposes" agreements; (3) parcels with no conveying instrument; and (4) parcels over which the parties agree that Union Pacific held only an easement on the date of the alleged takings.  *See* Pl. Mem. at 5-7; Def. Mot. at 10.  These 14 parcels are further described below.

### a.    Parcels Conveyed By "Right-of-Way" Agreements

First, the parties agree that nine parcels of land have been conveyed to Union Pacific via its predecessor-in-interest, the Burlington, Monmouth & Illinois River Railway Company, by "Right-of-Way" agreements (the "Right-of-Way Agreements"), namely, Parcel Nos. 21, 52, 75, 86, 92, 93, 94, 95 and 96.  Pl. Mem. at 5-6; Pl. Exs. K-S; Def. Mot. at 11.[2]  The parties also agree

---

[2] **Parcels Conveyed By Right-of-Way Agreements**

| NARA Map/Parcel: | Grantor | Plaintiffs |
|---|---|---|
| 1/21: Ex. K | J. Griswald | Estate of Nancy E. Dixon a/k/a Reichel |
| 2/52: Ex. L | J. Doubet | Kenneth Ferch |
| 3/75: Ex. M | D. McFadden | Barbara Hart-Troxell and James Hart Jr. |
| 3/75: Ex. M | D. McFadden | John Rosenbohm |
| 4/86: Ex. N | W. T. Dumars | Bradley E. and Diane S. Harding |
| 5/92: Ex. O | R. G. Merchant | C. Phillip Herbert Revocable Trust c/o C. Phillip Herbert |
| 5/93: Ex. P | J. D. Higgs | William E. Foster |
| 5/93: Ex. P | J. D. Higgs | Douglas M. and Dawn M. Harman |
| 5/94: Ex. Q | J. Teigh | Gilbert G. and Shirley E. Harman |
| 5/95: Ex. R | J. D. Stone | Hilshaw Enterprises, Inc. c/o Hilda Shaw, President |
| 5/94, 5/95, 5/96: Exs. Q; R; S | Wm. Cramer | Foster Farms, Inc. c/o Timothy Foster, President |

that the Right-of-Way Agreements for these parcels contain identical conveyance language, which provides as follows:

### RIGHT OF WAY

> In Consideration Of the benefits to be derived from the location and building of the Burlington, Monmouth & Illinois River Railway and One Dollar to me in hand paid by said Railway Company, the receipt whereof is hereby acknowledged, I do hereby grant and convey unto the said Burlington, Monmouth & Illinois River Railway Company the Right of Way for said Railway, four rods wide, over and across the [description of land].

> And I Promise and Agree To make all proper and necessary deeds to convey in fee simple to said Company, said Right of Way, as soon as said Railway is located on or across said described premises.

Pl. Exs. K-S.  Pl. Mem. at 12; Def. Mot. at 18.

In addition, the parties agree that the Right-of-Way Agreement for Parcel No. 75 differs from the other Right-of-Way Agreements in one respect.  In this agreement, the phrase "To make all proper and necessary deeds to convey in fee simple" is manually crossed out and replaced with the phrase "To quit claim deed."  Pl. Ex. M at 12, 16.  The parties also agree that this alteration does not affect the nature of the property interest conveyed.  Pl. Resp. at 14; Def. Mot. at 22 ("[g]iven that the agreement is otherwise identical to the form right-of-way agreements used for other parcels in this case, there is no indication that it was intended to convey anything less than fee simple title.").

The parties disagree, however, about whether the entirety of Parcel No. 75 has been conveyed to the railroad.  Pl. Mem. at 13-16; Def. Mot. at 23-24.  In this regard, it is undisputed that David McFadden executed a Right-of-Way Agreement with the Burlington, Monmouth & Illinois River Railway that conveyed at least a portion of Parcel No. 75 to the railroad on January 23, 1880.  Pl. Ex. M at 12.  It is also undisputed that certain other McFadden family members conveyed portions of Parcel No. 75 to the railroad via a Right-of-Way Agreement on that same date.  Def. Mot. at 23; Pl. Resp. at 14; Pl. Ex. M at 14; Pl. Ex. G at 12 (listing "D. McFadden" and the "McFadden Heirs" as grantors of Parcel No. 75 to the railroad).  In addition, it is without dispute that David McFadden acquired the remaining portions of Parcel No. 75 on September 1,

4

1880, when the surviving McFadden heirs made a complete transfer of their father's estate to Mr. McFadden.[3]  Def. Mot. at 23-24; Pl. Ex. W at 29.

### b.   Parcels Conveyed By "For Railroad Purposes" Agreements

The parties agree that Parcel No. 50 has been conveyed to Union Pacific via its predecessor-in-interest, the Burlington, Monmouth & Illinois River Railway Company, by a "for railroad purposes" agreement (the "For Railroad Purposes Agreement").  Pl. Mem. at 7; Def. Mot. at 24.  The For Railroad Purposes Agreement provides, in relevant part, that the grantors "convey and warrant for railroad purposes to the Burlington Monmouth & Illinois River Railway Company . . . the following described real estate, to-wit: a strip of land . . . over and across all the land owned by the grantors . . . ."[4]  Pl. Ex. V.

### c.   Parcels Without A Conveying Instrument And Undisputed Parcels

Lastly, the parties also agree that no conveyance instruments have been located for two parcels—Parcel Nos. 84 and 85—and that the railroad held only an easement with respect to two other parcels—Parcel Nos. 28 and 61.  Pl. Mem. at 6, 19-21; Def. Mot. at 12-14.  With regards to the parcels that lack a conveyance instrument, the ICC Valuation Map associated with these

---

[3] The parties also disagree about whether plaintiff Barbara Hart-Troxell—the owner of property alleged to be located on Parcel No. 75 ("Hart-Troxell Property")—has an ownership interest in the centerline of the Railroad Line.  Pl. Resp. at 9-10; Def. Mot. at 28.  In this regard, the property description for the Hart-Troxell Property states that the property lies exclusively within the south half of 9-8-6.  Def. Mot. at 28; Pl. Ex. H at 22.  But, the conveyance records for the two parcels that appear to abut the Hart-Troxell Property—Parcel Nos. 74 and 75—show that these parcels lie within the north half of section 9-8-6.  Pl. Ex. G at 12.

[4] **Parcels Conveyed By "For Railroad Purposes" Agreements**

| NARA Map/Parcel: Pl. Exhibit | Grantor | Plaintiffs |
|---|---|---|
| 2/50: Ex. V | W. Walker and M. Walker | Richard A. Filker; Michael J. Filker; Estate of Josephine Jackson |
| 2/50: Ex. V | W. Walker and M. Walker | George R. and Phyllis L. Holliday |

parcels states that the parcels have been conveyed to the railroad by Right-of-Way Agreements. Def. Mot. at 13-14 (citing Pl. Ex. G at 13).[5]

### B.      Relevant Procedural Background

On June 13, 2013, plaintiffs filed the complaint, which they subsequently amended on March 20, 2014, July 23, 2014, and March 3, 2016.  *See generally* Pl. Comp.; 1st Am. Compl.; 2nd Am. Compl.; 3rd Am. Compl.  Thereafter, the parties filed cross-motions for partial summary judgment on standing and title issues.  *See generally* Pl. Mot. on Standing; Def. Mot. on Standing.

On September 1, 2015, the Court issued a Memorandum Opinion and Order (the "September 1, 2015, Decision") granting-in-part and denying-in-part the parties' cross-motions for partial summary judgment on the issue of whether plaintiffs held a fee simple interest in certain property when the STB issued the NITU.  *See* Memo. Opinion and Order, Sept. 1, 2015. In the September 1, 2015, Decision, the Court held, among other things, that:

> 1.   Plaintiffs did not show that they held a fee simple interest at the time of the alleged takings with respect to certain parcels that were conveyed to Union Pacific by either Right-of-Way Agreements, or For Railroad Purposes Agreements;

---

[5] **Parcels Without A Conveying Instrument**

| NARA Map/Parcel: | Grantor | Plaintiffs |
|---|---|---|
| 4/84; 4/85: Ex. G at 13 | E. B Stewart; J.M. Stewart | Byzantio, LLC |

**Undisputed Parcels**

| NARA Map/Parcel: | Grantor | Plaintiffs |
|---|---|---|
| 1/28: Ex. T | G. Willcox and M. Willcox | Estate of Maurice McFolling |
| 1/28: Ex. T | G. Willcox and M. Willcox | Phillip J. Wright |
| 3/61: Ex. W at 57-58 | R. G. McCullough | Balagna House Moving, Inc. |

6

2. Plaintiffs did not show that they held a fee simple interest in certain parcels that lacked a conveying instrument;

3. The plaintiffs who owned Parcel No. 29 and the Illinois Route 116 Parcel held these parcels in fee simple at the time of the alleged takings; and

4. Neither party was entitled to entry of summary judgment in their favor with respect to a certain parcel that has been acquired by condemnation (Parcel No. 26).

*Id.* at 21-22.

After the parties completed additional discovery, plaintiffs filed a motion for partial summary judgment on liability with respect to 14 disputed parcels on March 12, 2020. *See generally* Pl. Mot.; Pl. Mem.  On June 12, 2020, the government filed a response and opposition to plaintiffs' motion for partial summary judgment on liability and a cross-motion for summary judgment. *See generally* Def. Mot.

On July 13, 2020, plaintiffs filed a reply in support of their motion for partial summary judgment on liability and a response and opposition to the government's cross-motion for summary judgment. *See generally* Pl. Resp.  On August 12, 2020, the government filed a reply in support of its cross-motion for summary judgment. *See generally* Def. Reply.

These matters having been fully briefed, the Court resolves the pending motions.

## III.   LEGAL STANDARDS

### A.   Jurisdiction

The Tucker Act grants this Court jurisdiction to consider Fifth Amendment takings claims brought against the United States. *See* 28 U.S.C. § 1491; *Morris v. United States*, 392 F.3d 1372, 1375 (Fed. Cir. 2004) ("[T]he Tucker Act provides the Court of Federal Claims exclusive jurisdiction over takings claims for amounts greater than $10,000.").

### B.   RCFC 56 And Summary Judgment

Pursuant to RCFC 56, a grant of summary judgment is appropriate when the pleadings, affidavits and evidentiary materials filed in a case reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  RCFC 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Biery v. United States*, 753 F.3d

1279, 1286 (Fed. Cir. 2014).  A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  A fact is "material" if it could "affect the outcome of the suit under the governing law . . . ." *Id.*

In resolving motions for summary judgment, the Court will not make credibility determinations and will draw all inferences "'in the light most favorable to the party opposing the motion.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).  In doing so, the Court does not weigh the evidence presented, but instead must "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *Agosto v. INS*, 436 U.S. 748, 756 (1978) ("[A trial] court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented . . . ."); *see also Am. Ins. Co. v. United States*, 62 Fed. Cl. 151, 154 (2004).  And so, the Court may only grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . ." *Matsushita*, 475 U.S. at 587.

The above standard applies when the Court considers cross-motions for summary judgment.  *Principal Life Ins. Co. & Subsidiaries v. United States*, 116 Fed. Cl. 82, 89 (2014); *see also Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 40 (1st Cir. 2010).  And so, when both parties move for summary judgment, "'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Abbey v. United States*, 99 Fed. Cl. 430, 436 (2011) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

### C.       The National Trails System Act

The Interstate Commerce Act of 1887, Pub. L. No. 95-473, 92 Stat. 1337 (recodified at 49 U.S.C. §§ 1101, 1121) and the Transportation Act of 1920, ch. 91, 41 Stat. 477-78 (recodified at 49 U.S.C. § 10903), grant the Interstate Commerce Commission, now the STB, exclusive authority over the construction, operation and abandonment of the Nation's rail lines.  *See Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 321 (1981).  In order for a railroad company to terminate rail service, the railroad company must obtain the consent of the STB.  *See Barclay v. United States*, 443 F.3d 1368, 1371 (Fed. Cir. 2006), *cert. denied*, 549 U.S. 1209 (2007).  To obtain such consent, the railroad company may apply for permission to

discontinue service, seek permission to terminate through abandonment proceedings, or file a request for an exemption from abandonment proceedings.  *See* 49 U.S.C. § 10903(d)(1)-(2) (2012); *Barclay*, 443 F.3d at 1371.  Once the STB consents, the rail line is removed from the national transportation system and the STB's jurisdiction comes to an end.  *Barclay*, 443 F.3d at 1371.

In 1983, Congress amended the National Trails System Act to include an alternative process for railroad companies to abandon rail lines.  16 U.S.C. § 1247(d); *Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1, 5-6 (1990) ("*Preseault I*"); *Caldwell v. United States*, 391 F.3d 1226, 1229 (2004) ("*Caldwell II*").  This process, known as "railbanking," preserves corridors or rights-of-ways not in use for train service for possible future use as recreational trails.  *Caldwell II*, 391 F.3d at 1229.

In order for a rail line to be "railbanked," the railroad company must first file an abandonment application under 49 U.S.C. § 10903, or a notice of exemption from that process under 49 U.S.C. § 10502.  *See* 49 U.S.C. §§ 10502 and 10903.  Once an abandonment application, or request for an exemption, is filed, a party interested in railbanking may request the issuance of a certificate of interim trail use ("CITU") (in abandonment application proceedings) or a NITU (in abandonment exemption proceedings).  49 C.F.R. §1152.29(c)-(d). If the railroad company indicates that it is willing to negotiate a railbanking and interim trail use agreement, the STB issues the CITU or NITU.  *Id.*  The issuance of the CITU or NITU preserves the STB's jurisdiction over the rail line and allows the railroad company to discontinue operations and remove track and equipment, while the parties negotiate a railbanking and interim trail use agreement.  *Id.*; *Macy Elevator, Inc. v. United States*, 97 Fed. Cl. 708, 712 (2011).

The NITU or CITU affords the railroad company 180 days in which to negotiate a railbanking and interim trail use agreement with the third party.  49 C.F.R. § 1152.29(c)(1), (d)(1); *Caldwell II*, 391 F.3d at 1230.  If an agreement is reached, the NITU or CITU automatically authorizes the interim trail use.  If the STB takes no further action, the trail sponsor then may assume management of the right-of-way, subject only to the right of a railroad to reassert control of the property for restoration of rail service.  *Caldwell v. United States*, 57 Fed. Cl. 193, 195 (2003), *aff'd*, 391 F.3d 1226 (Fed. Cir. 2004) (*Caldwell I*); *see also* 16 U.S.C. §

9

1247(d); 49 C.F.R. § 1152.29(d)(2).  If no agreement is reached, the railroad company may proceed with the abandonment process.  49 C.F.R. §§ 1152.29(d)(1), (e)(1)-(2).

### D.    Fifth Amendment Takings And "Rails-to-Trails" Cases

A Fifth Amendment takings occurs in rails-to-trails cases when the government, through the issuance of a CITU or NITU, destroys an individual's state law reversionary interest in property underlying a railroad right-of-way.  *Ladd v. United States*, 630 F.3d 1015, 1023-24 (Fed. Cir. 2010) ("The issuance of the NITU is the only event that must occur to 'entitle the plaintiff to institute an action.'  Accrual is not delayed until a trail use agreement is executed or the trail operator takes physical possession of the right-of-way." (citing *Barclay*, 443 F.3d at 1373)); *see also Caldwell I*, 391 F.3d at 1233-34.  "[O]nly persons with a valid property interest at the time of the taking are entitled to compensation."  *Wyatt v. United States*, 271 F.3d 1090, 1096 (Fed. Cir. 2001).  To determine whether a Fifth Amendment takings has occurred in a rails-to-trails case, the Court follows a three-part analysis established by the United States Court of Appeals for the Federal Circuit.  *See Ellamae Phillips Co. v. United States*, 564 F.3d 1367, 1373 (Fed. Cir. 2009) (citing *Preseault v. United States*, 100 F.3d 1525, 1533 (1996) ("*Preseault II*")).

First, the Court must determine who owned the land at issue at the time of the takings, and specifically, whether the railroad company owned the land in fee simple or held only an easement.  *Id*.  Second, if the railroad company held only an easement, the Court must determine whether the terms of the easement are limited to use for railroad purposes, or whether the terms include use as a public recreational trail.  *Id*.  Third, if the railroad company's easement is broad enough to encompass recreational trail use, the Court must determine whether the easement terminated prior to the alleged takings, so that the property owner held a fee simple estate unencumbered by easement at the time of the takings.  *Id*.

### E.    Illinois Property Law

To determine whether a railroad company held an easement over, or a fee simple interest in, a railroad corridor at the time of an alleged takings, the Court must look to the law of the state in which the property is located.  *Preseault II*, 100 F.3d at 1540.  Because the Railroad Line at issue in this case is located in the state of Illinois, Illinois law applies.  *See* 3rd Am. Compl. at ¶ 3; *Preseault I*, 494 U.S. at 20-21 (O'Connor, J., concurring).

Under Illinois law, conveyance instruments should be construed in a manner that fulfills the intention of the parties. *Cleveland, Cincinnati, Chi. & St. Louis Ry. Co. v. Cent. Ill. Public Serv. Co.*, 43 N.E.2d 993, 996 (Ill. 1942). This intention should be ascertained by reading the agreement as a whole, and every word and clause within the agreement should be considered and given full effect, if possible. *Keen v. Cleveland, Cincinnati, Chi. & St. Louis Ry. Co.*, 64 N.E.2d 499, 502 (Ill. 1945); *Tallman v. E. Ill. & Peoria R.R. Co.*, 41 N.E.2d 537, 539 (Ill. 1942); *Sowers v. Ill. Cent. Gulf R.R. Co.*, 503 N.E.2d 1082, 1084 (Ill. App. Ct. 1987). And so, "[a]bsent an ambiguity in the deed, the intention of the parties must be discerned solely from the language of the instrument, without consideration of extrinsic factors." *Urbaitis v. Commonwealth Edison*, 575 N.E.2d 548, 552 (Ill. 1991) (citing *Shelton v. Andres*, 478 N.E.2d 311, 314 (Ill. 1985)).

Illinois courts have held that determining whether an agreement grants an easement, or a fee simple estate requires "construction of the instrument to determine whether the granting clause conveys a designated piece of land or whether it refers to a right or privilege with respect to the piece of land." *Penn Cent. Corp. v. Commonwealth Edison Co.*, 512 N.E.2d 118, 119 (Ill. App. Ct. 1987) (citing *McVey v. Unknown Shareholders of Inland Coal & Washing Co.*, 427 N.E.2d 215, 217 (Ill. App. Ct. 1981)). These courts have also held that, generally, an instrument containing the words "convey and warrant" is deemed to convey a fee simple estate. *Urbaitis*, 575 N.E.2d at 552 (citing *Tallman*, 41 N.E.2d at 543). But, an instrument that grants simply a "right" in a parcel of land is deemed to convey only an easement. *Urbaitis*, 575 N.E.2d at 552 (citing *Magnolia Petroleum Co. v. West*, 30 N.E.2d 24, 26 (Ill. 1940)); *see also Walker v. Illinois Cent. R. Co.*, 74 N.E. 812, 813 (Ill. 1905) (holding that a deed that granted "the right of way for the same [railroad] over and through the following tracts or parcels of land" conveyed an easement for railroad right-of-way purposes); *Woodward Governor Co. v. Loves Park, Winnebago County*, 82 N.E.2d 387, 388 (Ill. Ct. App. 1976) (holding that a deed that granted "the right of way, use and occupancy for said railroad over and through the following land" conveyed an easement).

The Illinois Appellate Court has held that the use of the phrase "over and through" in a deed provides strong evidence that the parties intended to create an easement. *Diaz v. Home Fed. Sav. & Loan Ass'n of Elgin*, 786 N.E.2d 1033, 1042-43 (Ill. App. Ct. 2002). By comparison, the Supreme Court of Illinois has held that an instrument containing the words

"hereby releasing and waiving all rights under and by virtue of the Homestead Exemption laws of this State" conveys a fee simple interest.  *Urbaitis*, 575 N.E.2d at 554.

Specifically relevant to this rails-to-trails dispute, the Supreme Court of Illinois has held that a railroad obtains a prescriptive easement over a property when the property is acquired by adverse possession.  *Branch v. Cent. Trust Co. of Ill.*, 151 N.E. 284, 288 (Ill. 1926); *see also Chi. Title Land Trust Co. v. JS II, LLC*, 977 N.E.2d 198, 207-08 (Illinois App. Ct. 2012) (explaining that an express easement is established by agreement, and that an easement by prescription is established by long-term use without consent.).  Section 9 of the Illinois Conveyance Act also provides that every deed where the grantor "conveys and warrants" an estate shall be deemed and held a conveyance in fee simple to the grantee, his heirs or assigns.  765 Ill. Comp. Stat. Ann. 5/9 (1985).

In addition, Section 19 of the Conveyance Act authorizes railroad companies to "take and hold such voluntary grants of real estate and other property as shall be made to it, in aid of the construction and use of its railway, and to convey the same when no longer required for the uses of such railway, not incompatible with the terms of the original grant."  610 Ill. Comp. Stat. Ann. 5/19 (1985).  This authorization has been interpreted by Illinois state courts to permit "railroad corporations to take title in fee simple to lands conveyed to it."  *Keen*, 64 N.E.2d at 505.

Lastly, the Illinois after-acquired title statute provides that:

> If any person shall sell and convey to another, by deed or conveyance, purporting to convey an estate in fee simple absolute, in any tract of land or real estate, lying and being in this state, not then being possessed of the legal estate or interest therein at the time of the sale and conveyance, but after such sale and conveyance the vendor shall become possessed of and confirmed in the legal estate to the land or real estate so sold and conveyed, it shall be taken and held to be in trust and for the use of the grantee or vendee; and the conveyance aforesaid shall be held and taken, and shall be as valid as if the grantor or vendor had the legal estate or interest, at the time of said sale or conveyance.

765 Ill. Comp. Stat. Ann. 5/7 (1991).  And so, if a property owner attempts to convey title to land located in Illinois that the owner does not hold in fee simple, but the owner later acquires full title, the conveyance is treated as if the grantor owned the land in fee simple at the time of the conveyance.  *Id.*

IV.    **LEGAL ANALYSIS**

The parties have filed cross-motions for summary judgment on title and liability matters with respect to three issues:  First, whether Union Pacific held an easement or a fee simple interest in the 14 parcels in dispute at the time that the STB issued the NITU.  Pl. Mem. at 30-37; Def. Mot. at 17-27.  Second, in the event that Union Pacific held an easement over any of the disputed parcels, whether the scope of that easement included recreational trail use.  Pl. Mem. at 38-39; Def. Mot. at 35-37.  Lastly, if the scope of any easement has been exceeded, whether a temporary or permanent takings occurred.  Pl. Mem. at 39; Def. Mot. at 37-38.

For the reasons discussed below, the undisputed material facts show that Union Pacific held an easement over Parcel Nos. 28 and 61 when the STB issued the NITU.  The undisputed material facts also show that Union Pacific held the nine parcels conveyed by Right-of-Way Agreements, and the one parcel conveyed by a For Railroad Purposes Agreement, in fee simple when the STB issued the NITU.

In addition, the undisputed material facts show that plaintiffs have not met their burden to show that they held a cognizable property interest in the two parcels that lack a conveying instrument.  And so, for the reasons discussed below, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** plaintiffs' motion for partial summary judgment on liability and **GRANTS-IN-PART** and **DENIES-IN-PART** the government's cross-motion for summary judgment.

### A.    Union Pacific Held An Easement Over Parcel Nos. 28 And 61

As an initial matter, the undisputed material facts show that plaintiffs held Parcel Nos. 28 and 61 in fee simple when the STB issued the NITU.  The parties agree that Union Pacific held only an easement over Parcel Nos. 28 and 61 at that time.  Pl. Mem. at 35; Def. Mot. at 14; Def. Reply at 8.  The parties also agree that the scope of this easement did not encompass recreational trail use.  *See* Joint Status Report, October 5, 2020.  Given this, plaintiffs have shown that they owned Parcel Nos. 28 and 61 on the date of the issuance of the NITU.  And so, the Court **GRANTS** plaintiffs' motion for partial summary judgment on liability with respect to Parcel Nos. 28 and 61.[6]

---

[6] The Court does not reach the question of whether a temporary or permanent takings of these parcels has occurred.

**B.     Union Pacific Held The Parcels Conveyed
        By Right-Of-Way Agreements In Fee Simple**

Turning to the parcels that are in dispute, the undisputed material facts in this case also show that Union Pacific held the nine parcels originally conveyed to the Burlington, Monmouth & Illinois River Railway Company by the Right-of-Way Agreements in fee simple, when the STB issued the NITU.  The parties agree that the Right-of-Way Agreements for these parcels are identical and provide, in pertinent part, that:

RIGHT OF WAY

> In Consideration Of the benefits to be derived from the location and building of the Burlington, Monmouth & Illinois River Railway and One Dollar to me in hand paid by said Railway Company, the receipt whereof is hereby acknowledged, I do hereby grant and convey unto the said Burlington, Monmouth & Illinois River Railway Company the Right of Way for said Railway, four rods wide, over and across the [description of land].

> And I Promise and Agree To make all proper and necessary deeds to convey in fee simple to said Company, said Right of Way, as soon as said Railway is located on or across said described premises.

Pl. Exs. K-S; Pl. Mem. at 12; Def. Mot. at 18.  The Court reads the plain language of the Right-of-Way Agreements to convey a fee simple estate to Union Pacific.

As the Court previously recognized in the September 1, 2015, Decision, plaintiffs have not overcome the rebuttable presumption that the Right-of-Way Agreements convey the parcels at issue in fee simple under Illinois law.  The agreements provide, in relevant part, that "I do hereby *grant and convey* unto the said Burlington, Monmouth & Illinois River Railway *the Right of Way* for said Railway . . . And I Promise and Agree To make all proper and necessary deeds *to convey in fee simple . . . . said Right of Way . . . .*"  Pl. Exs. K-S (emphasis added).  Under Illinois law, there is a rebuttable presumption that real property that is conveyed by an agreement containing the word "convey"—as is the case here—conveys that property in fee simple.  765 Ill. Comp. Stat. Ann. 5/13 (1985); *see also Keen*, 64 N.E.2d at 502-03; *Sowers*, 503 N.E.2d at 1085.  Plaintiffs have not overcome this presumption in this case for several reasons.

First, as the Court held in the September 1, 2015, Decision, the words "right-of-way" and "across" in the Right-of-Way Agreements do not limit the estate conveyed to Union Pacific.  A plain reading of the Right-of-Way Agreements shows that the words "right-of-way" describe the

14

parcels that have been conveyed to Union Pacific.  Pl. Exs. K-S.  In fact, the title of the agreements—"RIGHT OF WAY"—makes clear that the parties intended to describe the parcels to be conveyed to the railroad in fee simple.  Pl. Exs. K-S.  This intent is also evidenced by language in the Right-of-Way Agreements stating that the grantor intends "to convey in fee simple."  *Id.*  And so, plaintiffs have not shown that the parties to these agreements intended to convey only an easement.

Second, as the Court also previously held in the September 1, 2015, Decision, the use of the word "across" in the Right-of-Way Agreements does not limit the estate conveyed to Union Pacific.  While Illinois state courts have held that the word "across" *may* limit the estate conveyed to something less than a fee simple estate under certain circumstances, these courts have also held that the word "across" does not limit the estate conveyed when it is being used to describe the property at issue.  *Tallman*, 41 N.E.2d at 539; *Spierling v. Ohl*, 83 N.E. 1068, 1069 (Ill. 1908); *Penn Cent. Corp.*, 512 N.E.2d at 119-20.  Again, a plain reading of the Right-of-Way Agreements at issue in this case makes clear that the use of the word "across" is intended to describe where the parcel being conveyed is located.  Pl. Exs. K-S.  In fact, in both instances where the word "across" appears in these agreements, this word precedes a detailed description of the parcels to be conveyed to the railroad.  *Id.*  And so, the Court reads the Right-of-Way Agreements to describe the parcels being conveyed to the railroad in fee simple under the terms of those agreements.  Pl. Exs. K-S; *Keen*, 64 N.E.2d at 503.

The Court is also not persuaded by plaintiffs' argument that the habendum clause in the Right-of-Way Agreements shows that the grantors intended to convey only an easement to the railroad.  Plaintiffs correctly observe that the habendum clause in the Right-of-Way Agreements provides that the grantors:  "Promise and Agree To make all proper and necessary deeds to convey in fee simple to said Company, said Right of Way, as soon as the railroad is located on or across said described premises."  Pl. Mem. at 33; Pl. Exs. K-S.  Plaintiffs argue that this language shows that the railroad obtained an easement, because there is no evidence of a subsequent deed conveying the property to the railroad in fee simple after the construction of the Railroad Line.  Pl. Mem. at 33-34.  The Court disagrees.

As plaintiffs correctly observe, a plain reading of the Right-of-Way Agreements makes clear that the habendum clause does state that the grantors will convey the property at issue in

15

fee simple "as soon as the railroad is located on or across said described premises." Pl. Exs. K-S. But, it is undisputed in this case that the railroad completed the construction of the Railroad Line. Pl. Mem. at 1 (showing that plaintiffs do not dispute that the railroad completed construction of the Railroad Line); Def. Mot. at 20. Given this, the undisputed material facts show that the grantors conveyed the parcels at issue to the railroad in fee simple once the railroad satisfied its obligation to complete the construction of the Railroad Line.[7]

Lastly, the undisputed material facts also show that Union Pacific acquired the entirety of Parcel No. 75 in fee simple under the Right-of-Way Agreement for that parcel. Unlike the Right-of-Way Agreements for the other eight parcels at issue, the Right-of-Way Agreement for Parcel No. 75 strikes the phrase "To make all proper and necessary deeds to convey in fee simple" and replaces that phrase with "To quit claim deed." Pl. Ex. M at 12, 16. As the parties correctly acknowledge, this change does not affect the nature of the property interest conveyed to the railroad under that agreement. *Id.*; Pl. Resp. at 14; Def. Mot. at 22. And so, for the reasons discussed above, the Right-of-Way Agreement for Parcel No. 75 also conveys a fee simple interest to Union Pacific.[8]

Because the plain language in the Right-of-Way Agreements for the aforementioned nine disputed parcels conveys a fee simple estate to Union Pacific under Illinois law, the Court concludes that Union Pacific held these parcels in fee simple when the STB issued the NITU. And so, the Court **DENIES** plaintiffs' motion for partial summary judgment on liability with

---

[7] The apparent absence of deeds conveying the parcels at issue following the construction of the Railroad Line is also insufficient to establish that the parties to the Right-of-Way Agreements intended to convey only an easement to the railroad, as plaintiffs suggest. Plaintiffs point to no evidence to show that the parties had a change of heart and subsequently decided to convey only an easement to the railroad. *See generally* Pl. Mem. at 30-35; Pl. Resp. at 3-5.

[8] The undisputed material facts also show that the entirety of Parcel No. 75 has been conveyed to Union Pacific. It is undisputed that David McFadden executed a Right-of-Way Agreement conveying at least a portion of this parcel to the railroad in January 1880, and that David McFadden subsequently acquired all of the McFadden family's interest in Parcel No. 75 in September 1880. Pl. Ex. M at 12; Def. Mot. at 24; Pl. Ex. W at 29. The Illinois after-acquired title statute—which was in effect at the time of these conveyances—provides that, when a property owner attempts to convey title to property that the owner does not hold in fee simple at the time, but later acquires full title to that property, the conveyance is treated as if the property owner owned the land at the time the conveyance instrument was executed. 765 Ill. Comp. Stat. Ann. 5/7 (1990). And so, the undisputed material facts show that David McFadden's conveyance of Parcel No. 75 included all of Parcel No. 75 under Illinois law.

respect to Parcel Nos. 21, 52, 75, 86, 92, 93, 94, 95 and 96 and **GRANTS** the government's cross-motion for summary judgment with respect to these parcels.

### C.     Union Pacific Held The Parcel Conveyed By A For Railroad Purposes Agreement In Fee Simple

The undisputed material facts also show that Union Pacific held Parcel No. 50 in fee simple when the STB issued the NITU.  It is undisputed that the railroad acquired Parcel No. 50 by way of a For Railroad Purposes Agreement.  Pl. Mem. at 7; Def. Mot. at 24.  The For Railroad Purposes Agreement for this parcel provides, in relevant part, that: the grantors "*convey and warrant for railroad purposes* to the Burlington Monmouth & Illinois River Railway Company . . . a strip of land . . . over and across all the land owned by the grantors."  Pl. Ex. V (emphasis supplied).  As discussed above, and explained in the Court's September 1, 2015, Decision, the use of the word "convey" in this agreement creates a rebuttable presumption that Parcel No. 50 has been conveyed to Union Pacific in fee simple.   765 Ill. Comp. Stat. Ann. 5/13 (1985); *see Keen*, 64 N.E.2d at 504 ("deed conveying to a railroad company 'a strip of land,' in the absence of any limitation in the deed upon the estate conveyed, conveys fee-simple title to the 'strip of land' described."); *Penn Cent. Corp*, 512 N.E.2d at 119-20.  Again, plaintiffs have not overcome this presumption.

As the Court previously held, the words "for railroad purposes" in the For Railroad Purposes Agreement do not limit the estate conveyed to Union Pacific under Illinois law.  In *Keen v. Cleveland, Cincinnati, Chi. & St. Louis Ry. Co*., the Supreme Court of Illinois held that similar words— "for the purpose of facilitating the construction and completion" of the railroad line—did not limit the conveyance, because the language was "merely the expression of the considerations which prompted the grantor to execute the deed. . . ."  *Keen*, 64 N.E.2d at 503; *see also Sowers*,  503 N.E.2d at 1086; *Penn Cent. Corp.*, 512 N.E.2d at 120.  Similarly here, a plain reading of the For Railroad Purposes Agreement shows that the words "for railroad purposes" are intended to explain that the reason for conveying Parcel No. 50 to the railroad is to operate the Railroad Line.  Pl. Ex. V.  And so, the Court does not read this agreement to limit the estate conveyed to Union Pacific.

The Court is also not persuaded by plaintiffs' argument that the phrase "over and across" in the For Railroad Purposes Agreement shows that the grantors intended to convey only an

easement to the railroad.  Pl. Mem. at 36 (citing *Diaz*, 786 N.E.2d at 1042); *see also* Pl Ex. V.
As discussed above, Illinois state courts have specifically held that the words "over" and
"across" do not limit the estate being conveyed when these words are being used to describe the
property at issue.  *Penn Cent. Corp.*, 512 N.E.2d at 120 ("We find that the use of the words
'over', 'across', and 'through' is merely descriptive of the estate conveyed and does not
constitute a limitation on the use of the land.").  In this case, the For Railroad Purposes
Agreement makes clear that the words "over" and "across" are intended to describe where the
parcel being conveyed is located.  Pl. Ex. V.  And so, the Court reads the For Railroad Purposes
Agreement to convey a fee simple estate to Union Pacific.[9]

Because the undisputed material facts show that Union Pacific held Parcel No. 50 in fee
simple when the STB issued the NITU, the Court **DENIES** plaintiffs' motion for partial
summary judgment on liability with respect to Parcel No. 50 and **GRANTS** the government's
cross-motion for summary judgment with respect to this parcel.

> ### D.      Plaintiffs Have Not Shown That They Own
> ### The Parcels With No Conveyance Instruments

As a final matter, plaintiffs have not met their burden to show that they held a cognizable
property interest in Parcel Nos. 84 and 85 when the STB issued the NITU.  The parties agree that
no conveyance instruments have been located for these parcels.  Pl. Mem. at 35-36; Def. Mot. at
13.  But, plaintiffs argue that the absence of any conveyance instruments for Parcel Nos. 84 and
85 indicates that Union Pacific acquired these parcels by adverse possession, and, thereby, held
only an easement under Illinois law.  Pl. Resp. at 13.  Plaintiffs' argument is unavailing.

Plaintiffs provide no evidentiary support for their contention that Union Pacific acquired
Parcel Nos. 84 and 85 by adverse possession.  *See generally*, Pl. Mot. and Pl. Resp.  In fact, the
evidence before the Court suggests that these two parcels have been conveyed to Union Pacific

---

[9] Plaintiffs' argument that the For Railroad Purposes Agreement conveys only an easement to the railroad
because the agreement does not include a waiver of the homestead exemption is equally unavailing.  To
support their argument, plaintiffs rely upon *Urbaitis v. Commonwealth Edison*.  575 N.E.2d at 551; Pl.
Mem. at 36.  But, the waiver of the homestead exemption in the conveyance instrument at issue in that
case was not the basis for the court's conclusion that the instrument conveyed a fee simple estate.
*Urbaitis*, 575 N.E.2d at 554 (holding that the deed conveyed a fee simple estate because, the deed was in
statutory form, it contained the words "conveys and warrants" and it contained no limiting language in the
granting clause).

via Right-of-Way Agreements, which, as discussed above, convey a fee simple estate to the railroad.  Notably, the ICC Valuation Schedule provided by plaintiffs shows that Parcel Nos. 84 and 85 were conveyed to the railroad in 1880, by "E.B. Stewart" and "J.M. Stewart" respectively, by Right-of-Way Agreements.  Pl. Ex. G at 13.  The Court has concluded that such Right-of-Way Agreements convey a fee simple estate to Union Pacific.  And so, while perhaps not dispositive of the title issue for Parcel Nos. 84 and 85, this evidence calls into doubt plaintiffs' assertion that Union Pacific acquired these two parcels by adverse possession.[10]  Pl. Resp. at 13.

Because plaintiffs have not met their burden to show that they owned Parcel Nos. 84 and 85 in fee simple when the STB issued the NITU, the Court **DENIES** plaintiffs' motion for partial summary judgment on liability with respect to these parcels.

## V.    CONCLUSION

In sum, the undisputed material facts in this case show that, when the STB issued the NITU:

1.  Union Pacific held an easement over Parcel Nos. 28 and 61; and

2.  Union Pacific held Parcel Nos. 21, 52, 75, 86, 92, 93, 94, 95 and 96, and 50 in fee simple.

In addition, plaintiffs have not met their burden to establish that they held cognizable property interests in Parcel Nos. 84 and 85 when the STB issued the NITU.  And so, for the foregoing reasons, the Court:

1.  **GRANTS** plaintiffs' motion for partial summary judgment on liability with respect to Parcel Nos. 28 and 61;

---

[10] Plaintiffs' reliance upon this Court's decision in *Schulenburg* is also misplaced, because the undisputed material facts in this case do not establish that Union Pacific acquired Parcel Nos. 84 and 85 by adverse possession.  *See Schulenburg v. United States,* 137 Fed. Cl. 79, 98 (Fed. Cl. 2018) *(*holding that under Indiana law, the railroad could only have obtained an easement by prescription over parcels that it acquired by adverse possession, where no original source deeds could be located.).

2. **GRANTS** the government's cross-motion for summary judgment with respect to Parcel Nos. 21, 52, 75, 86, 92, 93, 94, 95 and 96 and **DENIES** plaintiffs' motion for partial summary judgment on liability with respect to these parcels;

3. **GRANTS** the government's cross-motion for summary judgment with respect to Parcel No. 50 and **DENIES** plaintiffs' motion for partial summary judgment on liability with respect to this parcel; and

4. **DENIES** plaintiffs' motion for partial summary judgment on liability with respect to Parcel Nos. 84 and 85.

The parties are directed to **FILE** a joint status report on or before **December 31, 2020**, stating their respective views on how this matter should proceed, including whether this case should be referred for alternative dispute resolution.

**IT IS SO ORDERED.**

 s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge

20